MAGNOLIA ANTI-FRICTION METAL CO. *v.* SINGLEY.

(*Supreme Court, General Term, First Department.* December 31, 1891.)

PATENTS FOR INVENTIONS—ASSIGNMENT—RESTRAINING BREACH OF COVENANT.

Defendant assigned his invention and right to a patent therefor, and agreed to assign subsequent inventions and improvements of the same article, in consideration of 10 per cent. of net profits of its manufacture by the assignee, and agreed not to assist others in the sale or manufacture of such article; and the assignee agreed to employ him, if necessary, at a reasonable salary; and he thereafter entered into its employ. *Held,* that such assignment and agreement were founded upon an adequate consideration, and, not appearing to have been fraudulently procured, were valid, and that defendant might be restrained from engaging in the manufacture and sale of the article for other persons. INGRAHAM, J., dissenting.

Appeal from special term, New York county.

Action by the Magnolia Anti-Friction Metal Company against Samuel Singley to restrain defendant from the violation of certain agreements. Judgment for plaintiff. Defendant appeals. Affirmed. For former report, see 8 N. Y. Supp. 463.

Argued before VAN BRUNT, P. J., and INGRAHAM and DANIELS, JJ.

*Tremain & Tyler,* (*Rowland Cox* and *Mason W. Tyler,* of counsel,) for appellant. *Nichols & Bacon,* (*Alex. S. Bacon,* of counsel,) for respondent.

DANIELS, J. The disposition of this appeal depends upon the consideration and effect of the evidence taken at the trial. By that it appears that the defendant was the inventor of a process for the production of a metal compound known as "anti-friction metal." He had manufactured it in small portions, and disposed of the manufacture at different places, but had never entered into any extended or continued business for the manufacture of the metal, and did not appear to be a person financially able to commence or prosecute such business. But it appeared by the evidence, from his conceded habits, that he was incapable of instituting and maintaining this business. The invention was accordingly of but little use or value to himself, and, after an interview with Charles B. Miller at the city of St. Louis, he proceeded to the city of Mobile, to enter into an agreement there with Edward C. Miller, a capitalist, for the manufacture and sale of the product of this invention; and at that place, on the 5th of October, 1886, he entered into an agreement by way of assignment with Edward C. Miller, whereby for a nominal consideration he sold and transferred to Miller all his right, title, and interest in and to this improvement, and the letters patent therefor, when they should be granted, to be held and enjoyed by the assignee and his assigns as fully and entirely as they would be by the defendant if the assignment had not been made. On the same day a further agreement was entered into between these two persons by which it was agreed that the defendant should assist this assignee in manufacturing and marketing the anti-friction metal, and in consideration thereof the defendant was to receive 10 per cent. of all net profits accruing from the manufacture and sale of the metal. And it was further agreed, if it became necessary for the defendant to devote all his time in assisting to manufacture and market the metal, then the assignee agreed to pay him a fair and remunerative salary for his time, besides the 10 per cent. of net profits. These agreements were executed in the presence of Price Williams, Jr., who was a judge, and were certified by him; and, after they had been made, the assignee, Edward C. Miller, assigned to Charles B. Miller all the right, title, and interest which he had acquired to the improvement and to the letters patent therefor when they should be granted; and a re-

quest was made to the commissioner of patents to issue such letters to this assignee.

After these instruments had been executed, and on or about the 3d of December, 1887, the plaintiff was incorporated under the laws of the state of New York, ostensibly to carry on the business of manufacturing and selling the anti-friction metal; and after that incorporation, and on the 20th of February, 1888, the defendant made a further assignment of the invention to the corporation. By this assignment, and for a nominal consideration, he assigned to the company "the full and exclusive right to said several inventions, as fully set forth and described in the several specifications prepared and executed by me, February 20th, 1888, preparatory to obtaining letters patent of the United States therefor, for the United States and all foreign countries; and I do hereby authorize and request the commissioner of patents to issue the said several letters patent to the said the Magnolia Anti-Friction Metal Company, as the assignee of my entire right, title, and interest in and to the same, for the sole use and behoof of the said the Magnolia Anti-Friction Metal Company and its legal representatives." And on the 23d of the same month a further agreement was made between the plaintiff and the defendant Charles B. Miller, by which the plaintiff assumed the covenants of Edward C. Miller, which were contained in the agreement of the 5th of October, 1886; and thereby it became liable to pay to the defendant for the invention 10 per cent. of the net profits of the business, and a fair and remunerative salary for his time in case it should become necessary for him to devote that time to manufacturing and selling the metals. On the same day the defendant received the sum of $1,000 in such settlement and discharge of the liabilities of Edward C. and Charles B. Miller to him, and further agreed "to assign and set over unto said company any and all my inventions heretofore made, or which may be by me at any time made, in the composition or manufacture of anti-friction alloys or compounds, and to execute all necessary papers in order to secure to said company letters patent of the United States and all foreign countries therefor, as sole assignee of all said inventions: provided, always, that said instruments of February twenty-third, 1888, to said company, for the Magnolia anti-friction metals, shall apply to all such inventions to be assigned by me, and further covenant not to assist in any way, directly or indirectly, in the manufacture or sale of anti-friction metals in the United States, without the consent of said company." And under these several agreements the company acquired a plant and entered upon the manufacture and sale of the metal, and applications were also made under the laws of the United States for patents to secure the defendant's inventions to the company, and he also entered into the employment of the company, and continued in such employment until about the 4th of June, 1887, when he entered into an agreement with William H. Jewell to secure to Jewell the benefit and advantage of his inventions for the sum of $200, to be used in purchasing fittings, and for the personal use of the defendant, and the sum of $15 per week, together with one-third of the profits of the business. Soon after that the defendant appears to have become dissatisfied with this last agreement, and then made a statement, which has been authenticated by two witnesses, to the effect that he had been defrauded in obtaining that agreement from him, and that when it was executed by him he subscribed it while he was in an intoxicated condition. But the defendant manifested no disposition whatever to aid or assist the company in the manufacture and sale of the metal, but identified himself with the interests of others, and proposed by himself to manufacture and sell the metal in violation of his agreements, to which the plaintiff had in this manner, by the assignment of Charles B. Miller, succeeded. To restrain this violation of the agreements made by the defendant this action was brought against him by the plaintiff, and by way of relief it was demanded that he, together with the

other defendants in the action, should be enjoined and restrained from making known the formula or process used in the invention, or from manufacturing or assisting in the manufacture and sale of this article to the detriment and injury of the plaintiff. By way of defense it was alleged in the defendant's behalf that he had been imposed upon in obtaining from him these several agreements to which the plaintiff had succeeded, and also these which had been made with the plaintiff itself; that he was in an intoxicated condition when the papers were signed by him, and that his signature was obtained by fraud and overreaching him. And his own testimony upon the trial tended to prove the truth of these allegations; but the evidence given by the persons with whom he dealt, and by others who were sworn as witnesses on behalf of the plaintiff, was in direct conflict with these statements of the defendant, and, as these witnesses were before the court, and their appearance, intelligence, and manner of testifying was the subject of observation by the judge presiding at the trial, his conclusions must be accepted as conclusive against the defendant, and that in point of fact the agreements or assignments were neither of them obtained in this manner from the defendant. As to.the other two defendants in the action the complaint was dismissed, but as to the present defendant it was held that the plaintiffs had maintained their right to restrain him from violating these agreements, and judgment to that effect was directed against him.

In support of the appeal the assignments have been assailed as invalid, but there certainly was no inability or incompetency proved on the part of the defendant to make and bind himself by the assignments and agreements to which he became a party. Upon this subject the law seems to be quite well settled, maintaining the conclusion that an inventor may not only bind himself by an assignment of a present completed invention, but also to add to such assignment others that may afterwards become necessary to transfer subsequent improvements or discoveries made by him. This subject was generally considered in *Gayler* v. *Wilder*, 10 How. 477; *Railroad Co.* v. *Trimble*, 10 Wall. 367; *Hammond* v. *Mason, etc., Co.*, 92 U. S. 724,—where the principle which has already been stated was very generally sustained. No doubt, therefore, can be entertained but that the defendant effectually bound himself, so far as he endeavored to do that by the assignments and agreements to which he became a party; and there was a sufficient consideration appearing from the recitals and statements contained in the instruments to render them legally binding upon him. But it has been claimed in his behalf that it is to be presumed, in the absence of proof to the contrary, that he had been overreached by the Millers and the company in obtaining these instruments from him; and the principle maintained in *Fisher* v. *Bishop*, 108 N. Y. 25, 15 N. E. Rep. 331, has been appealed to for the purpose of sustaining this position. But that authority contains no statement of the law which will justify the conclusion that either of these instruments failed to be binding and operative upon the defendant, for it not only does not appear that any fiduciary relation existed between himself and either or both of the Millers, but the fact itself appears to be otherwise. He was in no respect concerned with them at the time when the first interview took place with him at the city of St. Louis, contemplating the manufacture and sale of this metal through the assistance or instrumentality of either of the Millers; but he was entirely free to act as he chose to do, both at the time of the conversation and after he proceeded to Mobile, where the first assignment and agreement were entered into. And at no time subsequent to that does there appear to have been any misrepresentations, restraint, or imposition exercised in obtaining his signature to the other instruments subscribed by him. On the contrary, each of them was executed freely and voluntarily in the presence of one or more responsible as well as indifferent persons, and a compensation was reserved and maintained for him throughout the execution of these in-

struments that the evidence fails to prove was not entirely adequate for the value of the invention and covenants entered into by the defendant. There is literally no proof in the case from which the conclusion can be adduced that any more advantageous terms should have been conceded to the defendant for the acquirement of the rights and privileges finally vesting in the company; and, as he acted freely and independently, and was subject to no sinister influence by either of the Millers or the company, there seems to be no reason whatever for disregarding or relieving him from the obligations of his agreements. On the contrary, the effect and tenor of the evidence throughout is that he was fairly and reasonably dealt by, and that his own indisposition to avail himself of the advantages secured to him by the agreements is alone the cause of his failure to profit by what was mentioned and agreed to in the instruments. He was accordingly in no condition where he could disregard the obligations which he had in this manner voluntarily taken upon himself, and to prevent that disregard of those obligations it was competent for the court to interpose and subject him to the restraint created and declared by the judgment. *Champlin* v. *Stoddart*, 30 Hun, 300–302. And no well-founded objection can exist against the validity of the agreement because of the fact that the entire inventions of the defendant were intended to be assigned and transferred ultimately to the plaintiff. *Match Co.* v. *Roeber*, 35 Hun, 421, 106 N. Y. 473, and 13 N. E. Rep. 419.

But one exception appears in the case to the exclusion of evidence offered by the defendant, and that was to the letter written by him to the company and Charles B. Miller on the 31st of January, 1889. This letter was offered as proof that the defendant did not assent to an account which was rendered to him by the company on the 1st day of the same month. But the fact that he had not assented to the account was already stated by him, and there was no contradiction of it, but it seems to have been accepted by the justice presiding at the trial as the truth of that part of the case. This letter appears to have been written as a studied and elaborate statement of the case as it was claimed by the defendant, and, so far as it related to other subjects, was clearly inadmissible at the trial; and, as no offer was made to read only such parts of the letter as related to the account, there was no error in its exclusion as evidence by the court. And no evidence was admitted against the defendant to which any substantial objection appears, or could have been taken at the trial. On the contrary, the case seems to have been disposed of in strict conformity to the law as well as the proof, and the only result which can be reached appears to be that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., concurs.

INGRAHAM, J., (*dissenting.*) The injunction in this case restrained the defendant from making the sale of any anti-friction metal, alloy, or compound whatsoever; from assisting any person or corporation in the manufacture or sale of any anti-friction metal, alloy, or compound; and from engaging or continuing in the employ of any person or corporation whatever, either directly or indirectly, in the manufacture or sale of such metals. The only covenant of the defendant which would serve as the foundation for such judgment is that contained in Exhibit K, where the defendant covenants not to assist in any way, directly or indirectly, in the manufacture or sale of anti-friction metals in the United States, without the consent of the said company, (the plaintiff.) Considering the relation that existed between the defendant and the Millers; that the defendant is an uneducated man, not accustomed to business transactions of this character; that the effect of this judgment will be to prevent this defendant from earning his living in any way except as this plaintiff may permit, without any obligation on behalf of this plaintiff to pay him any sum of money except 10 per cent. of the net

profits arising from the sale of the metal,—I do not think an agreement is presented which a court of equity, in the exercise of the judicial discretion vested in it, should specifically enforce. From the nature of the agreement the failure of any express covenant on behalf of the Millers or plaintiff to pay the defendant anything, and the fact that the defendant gave up his inventions, his right to work for any one except the plaintiff, without any agreement that he himself should be employed by the plaintiff, would seem to indicate that defendant could not have understood what he was doing, or the effect of the contract that he made. This is an application to a court of equity for equitable relief, and the contracts themselves are so inequitable that I do not think this court should enforce them.