# J. M. Ackley & Co. v. Hunter-Benn & Co.'s Company.

## Bill for Discovery, Statement of Account and Injunction.

(Decided Nov. 18, 1909.  Rehearing denied Feb. 26, 1910.
51 South. 964.)

1. *Sales; Construction; Partial Rescission.*—Where the contract provided that plaintiff sold to the defendant the standing timber on a track of land in consideration of an option to plaintiff to purchase the lumber manufactured from the timber, the contract was entire and the option with the provision for the purchase of the lumber became a part of the contract and neither could cancel the part relating to the sale of the lumber without cancelling the entire contract.

2. *Same; Construction; Sale of Timber.*—Where the contract for the sale of timber by the plaintiff to the defendant gave plaintiff an option to repurchase the lumber sawed therefrom and provided that the delivery of the lumber should be made in all respects as deliveries were then made by defendant to G. & Co., under an existing contract between G. & Co. and the defendant, the delivery specified in the G. & Co., contract, referred to the manner of delivery provided by the contract and not to any other delivery which the parties to that contract may have sanctioned.

3. *Same Rescission.*—The contract of sale provided an option in the plaintiff to purchase of the defendant lumber sawed from the timber conveyed by the contract and also provided for the delivery and measurement. of the lumber; after several deliveries had been made and paid for two rafts of sawed lumber were delivered and plaintiff refused to pay for them according to defendant's specifications, but. after defendant had given notice of rescission the money was tendered to defendant in accordance with its demands, the construction of the contract being reserved for future determination. Held, plaintiff's temporary refusal to pay was not ground for rescission. for where a party wishes to rescind a contract he must notify the other party so as to give him a reasonable time to comply

[J. M. Ackley & Co. v. Hunter-Benn & Co.'s Company.]

with the terms of the contract, hence, the contract was not so rescinded by defendant's notice of rescission as not to be reviewed by the subsequent offer of plaintiff.

4. *Same; Breach; Damages.*—Where plaintiff sells defendant timber and elects to exercise the option reserved in the contract to purchase the lumber made from the timber, and defendant's attempt on insufficient grounds to rescind the contract of resale of the lumber, and proceeded to sell the lumber to other persons the defendant becomes liable for damages for breach of the contract, and cannot complain that the measure of damages for his violation is fixed at the difference between the contract price and the price at which the lumber was sold.

5. *Contract; Presumption as to Good Faith.*—Good faith on the part of the contractors is presumed in all contracts.

6. *Same; Rescission; Ground.*—Not every disagreement as to the terms of the contract will authorize one of the parties to declare the contract annulled; the renunciation must cover the entire performance to which the contract binds the parties and must be distinct and unequivocal.

7. *Logs and Logging; Construction; Reference to Another Contract.*—Where the contract provided for the sale of standing timber on a certain tract of land with an option in the plaintiff to repurchase the lumber made from such timber, that the payments for the lumber should be in cash on delivery of the specification, and for delivery in all respects as deliveries were made by defendant to G. & Co., under a contract between them and the contract with G. & Co., provided for delivery at the buyer's boom as fast as water will permit and timber is gotten, and that each and every raft is to be taken on its own average, and there shall not be two average worked on any one raft and that no raft should contain less than 300 pieces, average to be made at their mill boom, the reference to G. & Co.'s contract included the clauses requiring rapid delivery and prescribing the number of pieces in the raft, and also the provision as to the average and delivery of the lumber, as soon as enough could be assembled in such quantity as is usually shipped together, and while the seller must be allowed some discretion in consulting his convenience as to the quantity to be shipped at one time, yet, he could not manipulate the delivery for the purpose of working a fraud on the other party.

8. *Same.*—Where the contract for the sale of lumber provided that the trees were of such size that when all of them shall have been manufactured into sawn timber, the entire lot shall not be less than 30 cubic feet per stick, and it is understood between the parties that it is not practicable to log any land so that the timber manufactured from such logs shall average an exact number of feet per stick, and it is agreed that in this case any reasonable variation from a thirty foot average as may result from this cause shall not be deemed a violation of this contract, or entitled either party to claim anything from the other on account of such variation, the contract covered reasonable variations from the 30 foot average but was not intended to authorize manipulations of deliveries by the defendant to the plaintiff under the option so as to work out an increase in the price to be paid for the timber.

9. *Same; Decision of Inspector; Conclusiveness; Fraud.*—Where the contract provided for the payment in cash on delivery of specifications of the lumber sold and that the lumber should be inspected at the seller's expense by a named person whose inspection should be final, the purpose of the provision as to the inspection was to ascertain the grade of the lumber before acceptance, and whether it was in accordance with the contract, and such inspection was conclusive on both parties except for fraud; but an error in the average of the lumber delivered. where both parties had the lumber, and all the facts before them and agreed on the average and inspection then made, could not be inquired into on the ground of fraud.

APPEAL from Mobile Chancery Court.

Heard before Hon. THOMAS H. SMITH.

Bill by the Hunter, Benn & Co.'s Company against J. M. Ackley & Co., and cross-bill by Ackley & Co., against the Hunter-Benn Company. Decree for complainant, and respondent appeals. Affirmed.

See, also, 154 Ala. 416, 45 South. 909.

The bill was for a discovery and a statement of account and construction of the contract. The cross-bill sought an abatement of the original purchase price to the extent of the purchase price of 380 acres to which the complainants had no title. The pleadings in the case were settled on the former appeal, found in 154 Ala. 416, 45 South. 909. The contract referred to in the opinion is as follows:

"By agreement made on February 7, 1902, between Hunter, Benn & Co.'s Company, a corporation, and J. M. Ackley & Co., a partnership, naming the partners, the Hunter-Benn Company, being the owners of the following described land, situated in Choctaw county, Alabama, towit: [Here follows description of the land by government subdivision]—does hereby sell and convey to J. M. Ackley & Co. all of the pine trees standing upon the said land which are of such size that, when all of them shall have been manufactured into sawn timber, the average of the entire lot shall be not less than 30 cubic feet per stick. It is understood be-

tween the parties hereto that it is not practicable to log any lands so that the timber manufactured from such logs shall average an exact number of feet per stick, and it is agreed that in this case such reasonable variations from a 30-foot average as may result from this cause shall not be deemed a violation of this contract or entitle either party to claim anthing from the other on account of such variation.

"(2) Ackley & Co. agree to pay for said stumpage upon said lands the sum of $9 per acre, such payments to come out of the proceeds of the timber cut from said lands, and to be made immediately after the sale of each raft or lot of said timber, and in all respects as hereinbefore shown. It is supposed that the said lands upon the average will cut about nine of said timber logs per acre, and until such time as one or the other of the parties hereto shall request a change in that respect under the provisions thereof there shall be paid to the said Hunter, Benn & Co.'s Company the sum of $1 out of the proceeds of each stick of said payment. Should either of the said parties at said time request that the amount of said payments be. changed, and the parties hereto cannot agree thereon, then all of said lands shall be estimated by some disinterested and competent timber estimator, to be chosen in the manner hereinafter shown, and such estimate shall be binding upon both parties hereto. Should the said estimate show that the said lands will cut more than nine sticks of 30-foot average timber per acre, then the payment to be made from the proceeds of each stick as sold shall be decreased proportionately. Should the said estimate show that the said lands will not cut as many as nine sticks of such timber per acre, the payments per stick shall be increased proportionately. The said estimator shall be some competent and disinterested

person agreed upon by both parties hereto, and, in the event they cannot agree, then they shall each select one person, and the two thus selected shall choose a third, and the three so chosen shall name some competent and disinterested estimator, who shall make the estimate hereinabove provided for. There are 4,386.64 acres of said land, which, at $9 per acre, amount to $39,479.76, and when that amount shall have been paid to said Hunter, Benn & Co.'s Company by said J. M. Ackley & Co., the stumpage for all timber thereby sold shall be deemed to be fully paid for, and all further payment on that account shall cease. Any balance of said sum of $39,479.76 which may remain unpaid on the 1st day of April, 1903, shall become due and payable at once.

"(3) In consideration of it so selling said stumpage, the said Hunter, Benn & Co.'s Company is hereby given the option for 60 days from this date of making a contract with the said J. M. Ackley & Co., by the terms of which the said J. M. Ackley & Co. shall bind themselves to sell to the said Hunter, Benn & Co.'s Company, and the said Hunter, Benn & Co.'s Company shall bind itself to buy from the said J. M. Ackley & Co., all of the sawn timber classing B and better which may be manufactured from the logs cut from lands under this contract prior to April 1, 1903, at the market price of such timber at Mobile, Ala., at the time said option is exercised, but not exceeding 14½ cents per cubic foot on a basis of 30 cubic feet average. The said contract shall also embrace any hewn timber that may be cut from said land, and the price thereof is to be 15 cents per cubic foot upon the basis of 100 cubic feet average and B1 good. It shall further provide that payment for all said timber should be in cash on delivery of specifications, and that the said timber shall be inspected at seller's expense by W. J. Thornton, of Mobile, Ala.,

whose inspection shall be final. Should the said Hunter-Benn Company, elect to exercise this option before the expiration of 60 days from this date, and the parties hereto cannot agree as to what is the then price of timber in Mobile [Here follows the agreement for selection of arbitrators to determine].

(4) Is the retention of the statutory lien for stumpage upon each lot or raft of timber manufactured from the logs cut from said land.

(5) Constitutes the agreement as to the amount to be cut and the time and the conditions under which it shall revert.

(6) Has reference to the extension of the contract in the event Hunter, Benn & Co. should take the option to make the contract referred to in paragraph 3.

(7) Has reference to certain disputed title to the land and agreement in reference thereto.

(8) Warranty by Hunter, Benn & Co. as to the ownership of the land.

"(9) In the event of a purchase by Hunter, Benn & Co.'s Company of any of the timber manufactured from the logs cut from said lands, it is agreed that the timber be so purchased at the mill of C. L. Sowell & Co., at Magazine, Ala., or some equally good mill in the vicinity of Mobile, Ala., and that it shall be delivered to the said Hunter, Benn & Co. in Chickasabogue, in Mobile county, Alabama, in all respects as deliveries are now made by the said J. M. Ackley & Co. to W. H. Greenwood & Co. under the contract now existing between them. The Greenwood agreement was between Greenwood & Co. and Ackly & Co., by which Greenwood & Company took from Ackley & Co. their entire cut of logs brought down from their timbered lands and camp now established and in operation in Choctaw county, Alabama, to class B and better, not less than

[J. M. Ackley & Co. v. Hunter-Benn & Co.'s Company.]

one-third A. and to average not less than 30 cubic feet
per stick, price to be 14½ cents per cubic foot on the
basis of 40 cubic feet average for class B and better,
delivery to be made at buyer's boom as fast as water
will permit and timber is gotten, and to be completed
before the 1st day of September, 1900, timber to be in-
spected and measured on all four sides by buyer's in-
spector, and classified according to the classificaion of
timbers, etc., now current at the port of Mobile, seller
paying the usual inspection fees; payment, cash in ex-
change for specification. It is further understood that
seller shall not deliver or sell any timber to other par-
ties until this contract is completed [with the noted ex-
ception]. It is also agreed that the lumber cut from
these logs in the manufacture of timber is to be in-
cluded in this contract, particulars as follows: [Here
follow certain lumber measurements and prices.] It is
further agreed that all lumber and deals shall be deliv-
ered alongside of vessel at seller's expense; also that
each and every raft is taken on its own average, and
there shall not be two averages worked on any one raft,
and that no raft shall contain less than 300 pieces, said
average, if any, to be made up at their mill boom.
Should sellers wish it, buyers are to advance 80 per
cent. on the prime and heart face cut when it is prop-
erly manufactured and cut."

STEVENS & LYONS, for appellant. The Chancellor
erred in ignoring and disregarding objections presented
to certain portions of certain depositions which were
made at length and duly noted.—*Seals v. Robinson,* 75
Ala. 369; *Babcock v. Carter,* 117 Ala. 581. Under the
facts in this case the entire 5th paragraph of appel-
lant's answer to the original bill must be accorded due
consideration as evidence in the case.—*Wilson v. Cal-*

*vert,* 8 Ala. 757; *Bradford v. Bush,* 10 Ala. 389; *Ward v. Winston,* 20 Ala. 168. As to the construction of the contract counsel cite the following authorities.—*Williams v. Glover,* 66 Ala. 189; *E. L. Co. v. Elder Bros.,* 115 Ala. 148; *Mason v. Ala. I. Co.,* 73 Ala. 74; *B. E. L. & P. Co. . Montgomery,* 114 Ala. 442; *Crass v. Scruggs,* 115 Ala. 268; *Comer v. Bankhead,* 70 Ala. 141; *Bolman v. Lobman,* 79 Ala. 67; *Thornton v. Sheffield,* 84 Ala. 112. Sufficient authority for serving notice of rescission was shown.—*Kansas City v. Cullman,* 68 Pac. 1102; 14 A. & E. Ency. of Law, 1002. Failure to pay the two installments, in this instance the two rafts of timber, constituted a breach of the contract so as to authorize the rescission.—*Hieronymous v. Bienville Water Sup.,* 131 Ala. 454; *Worthington v. Gwin,* 119 Ala. 53; 9 Cyc. 649; 1 Atl. 323; 26 Atl. 504; 30 Pa. St. 116; 31 N. E. 249; 24 A. & E. Ency. of Law, 1104; 51 Atl. 208. The rescission of the contract was completed on Dec. 22, and the tender of Dec. 23, was without efficacy or effect, especially when considered in connection with the letter accompanying it. The original contract is essentially an executed conveyance of realty.—*Roscow v. Bay City L. Co.,* 139 Ala. 571. There was no condition upon the grant and conditions or limitations upon such grants are not raised readily by inference.—*Zimmerman Mfg. Co. v. Daffin,* 149 Ala. 388.

GREGORY L. & H. T. SMITH, and N. R. CLARKE, for appellee. One party cannot violate the contract himself and then seek a rescission on the ground that the other party had followed his example.—24 A. & E. Ency. of Law, 647; Chitty on Contr. 633. By accepting delivery of other rafts which had been made up on like order appellees had not varied their contract in withholding delivery.—*Dare & Co. v. Mobile C. & B. M.*

*Co.,* in MS. The defendants could not rescind the entire contract on account of the failure of complainant to accept and pay for one delivery.—*Sims v. Ala. B. Co.,* 132 Ala. 313; *Worthington v. Gwin,* 119 Ala. 53. The contract could not be rescinded without putting the party in default upon notice and give him a reasonable opportunity after notice to perform.—*Elliott v. Howison,* 146 Ala. 568. A rescission must be distinct and unequivocal, absolute refusal to perform, and must be treated and acted upon by the party to whom the promise is made.—*Dingley v. Oler,* 117 U. S. 503; Benj. on Sales, sec. 744 and 784; *Smoots' Case,* 15 Wall. 47; 9 Cyc. 637; 97 N. Y. Supp. 103; 50 N. W. 837; 4 Atl. 91. Insisting upon counter claim does not amount to a refusal to perform.—Benj. on Sales, 784; *Cochrun v. Prosser,* 22 W. R. 222. Stevens was without authority to serve notice and no ratification by his principles would be binding upon them without evidence showing that it had been made upon full and fair knowledge of the facts.—*Wheeler v. McGuire,* 86 Ala. 298; 1 A. & E. Ency. of Law, 1189. Communications upon which depended the question as to whether or not the agent had authority upon the principle can never be privileged.— 10 Ency. of Evid. 244-5-6 and 237; Meachum on Agencies, sec. 282; *Home Ins. Co. v. Edler,* 71 Ala. 517. In order to rescind one part of the contract, the whole must be rescinded. The appellants could not rescind the part of the contract beneficial to the appellees and retain that part beneficial to themselves.—*Jones v. Anderson,* 82 Ala. 302; *Young v. Arntz,* 86 Ala. 116; *Henderson v. Boyett,* 126 Ala. 173; *Sample v. Guyer,* 126 Ala. 172.

SIMPSON, J.—The bill in this case was filed by the appellee (a corporation), against the appellant, pray-

ing for discovery, a reference, and statement of accounts, and an injunction. On February 7, 1902, appellant and appellee entered into a contract, the material parts of which will be set out in the statement of the case. Said Hunter, Benn & Co. sold certain timber to said J. M. Ackley & Co.; and in the contract of sale it is stated that, "in consideration of it so selling said stumpage the said Hunter, Benn & Co. is hereby given the option for sixty days to make a contract with said J. M. Ackley & Co.," by the terms of which said J. M. Ackley & Co. were to sell to said Hunter, Benn & Co. all of the sawn timber of certain quality manufactured from the logs cut on said land. Said Hunter, Benn & Co. elected to take said option, within the time fixed, and, after several deliveries had been made and paid for, difference of opinion arose as to how the timber was to be "averaged," and, on the refusal of said Hunter, Benn & Co. to pay for two rafts delivered according to the specifications of J. M. Ackley & Co., the attorney of the latter gave a written notice canceling the contract. So this brings up the construction of the contract, and the question as to whether said party had a right to cancel the same.

The contract is entire, and the option to purchase the sawed timber is stated to be in consideration of the selling of the standing timber. When that option was taken, the provisions with regard to the purchase of the sawed timber became a part of the contract, as fully as if they had been embodied therein without any proviso as to the option. That being the case, neither party could cancel a part of the contract, without canceling it entirely.

The contract described the standing timber sold, as "all of the pine trees standing upon said lands which are of such size that, when all of them shall have been

manufactured into sawn timber, the average of the en-
tire lot shall be not less than 30 cubic feet per stick. It
is understood between the parties hereto that it is not
practicable to log any lands so that the timber manu-
factured from such logs shall average an exact number
of feet per stick, and it is agreed that, in this case, such
reasonable variations from a 30-foot average as may re-
sult from this cause shall not be deemed a violation of
this contract, or entitle either party to claim anything
from the other on account of such variation."

The manufactured timber to be sold back to said
Hunter, Benn & Co. is the sawed timber and hewed tim-
ber, of certain dimensions, at certain prices "per cubic
foot on a basis of 40 cubic feet average," for the sawed
timber, and 100 cubic feet average as to the hewed tim-
ber; and it is provided that "payment for all said tim-
ber shall be in cash on delivery of specifications, and
that the said timber shall be inspected at seller's ex-
pense by W. J. Thornton, of Mobile, Ala., whose in-
spection shall be final." It is provided that the timber
shall be delivered at a certain place "in all respects as
deliveries are now made by the said J. M. Ackley & Co.
to W. H. Greenwood & Co., under the contract now ex-
isting between them."

The Greenwood contract provides: "Delivery to be
made at buyer's boom as fast as water will permit, and
timber is gotten." It is also provided in writing, at
the close of the printed matter, in the Greenwood con-
tract, "that each and every raft is taken on its own av-
erage, and there shall not be two averages worked on
any one raft, and that no raft shall contain less than
300 pieces, said average, if any, to be made at their mill
boom."

In explanation of the use of the word "average," it
seems that it makes a considerable difference as to the
amount of money to be paid for the timber, according
as the average is made on each raft, or each delivery of

several rafts, or on the whole amount finally delivered. Thus the timber might be so manipulated that a raft would contain something less than the prescribed quantity, yet, under the saving clause of the contract, if the average was made on that raft alone, the payment would be as of the prescribed quantity; whereas, if said raft was taken in with one or more other rafts, and the average made on all together, the seller would not get the benefit of these fractions, and the result would be that he would receive much less than he would, on the single average plan. And in other ways the rafts may be so manipulated as to increase the payment to the seller.

It is claimed by the appellee that appellant was not complying with the agreement in regard to delivery "as fast as water will permit and timber is gotten," but was holding back the timber, when gotten out, for the purpose of manipulating it, so as to get the advantage by having an average made on each raft. Consequently, when two rafts were delivered at the same time, said Hunter, Benn & Co. (appellees) insisted on making the average on both together, and not on each raft separately, and also insisted that, on a final settlement, all of the deliveries should be added together and a general average made, which would adjust all inequalities in the separate deliveries. Said J. M. Ackley & Co. (appellants) refused to accept said average, and thereupon its attorney addressed the letter to Hunter, Benn & Co., cancelling the said contract "for the sale and delivery of timber," "on account of your (their) noncompliance with its terms."

While the expressions in the contract are not as clear as they might be, yet we hold that its meaning is that the reference to the Greenwood contract points, not merely to the clause requiring rapid delivery, but also to the written clause which prescribes the number of pieces which shall be in a raft, and that carries with

it the remainder of the paragraph prescribing how the average shall be made. All of these matters pertain to the manner in which the lumber shall be delivered and received. The expression in the contract, that deliveries are to be made "in all things" as in the Greenwood contract, indicates an intention to include the provisions of the written clause relating to delivery, as well as the first clause about rapid delivery, which could have been expressed in a few words, without reference to the Greenwood contract.

The evident intention of the clause prescribing the number of logs to be in a raft was to prevent the manipulation of rafts so as to increase the price, by means of the average, and the provision that "each and every raft is taken on its own average, and there shall not be two averages worked on any one raft," shows that the raft was to be the basis of averaging. It may be that it was thought that each delivery would be in one raft; but it is not so stated, and the language of the contract does not admit of any other interpretation than that each raft was to be averaged to itself.

All contracts are presumed to intend good faith on the part of the contractors, and the evident purpose of the provision requiring deliveries as fast as water will permit and timber is gotten is that, as soon as the timber can be gotten out, and assembled in such quantities as are usually shipped together, the same shall be delivered. Of course, the party selling the timber must be allowed some discretion, in consulting his own convenience as to the quantities to be shipped at one time; but any manipulation of the deliveries for the purpose of working a fraud on the other party will be rebuked by the court.

The provision with regard to reasonable variations from the 30-foot average was intended merely, as it states, to provide against the impracticability of so logging the land that each log shall contain the exact

[J. M. Ackley & Co. v. Hunter-Benn & Co.'s Company.]

number of feet, and it is intended to protect the party only from "such reasonable variations * * * as may result from this cause." It contemplates good faith in the attempt to bring out such average, and is not intended to authorize the seller to manipulate the deliveries, so as to work out an increase in the price to be paid for the timber.

The reference to the deliveries made under the Greenwood contract must refer to the manner of delivery provided by that contract, and not to any delivery which the parties to that contract may have sanctioned, other than as provided in the contract.

In addition to what has been said as to the right of rescission of the contract in this case, it may be said that it is not every disagreement, as to the terms of a contract, which authorizes one of the parties thereto to declare the contract annulled. "The renunciation must cover the entire performance to which the contract binds the promisor."—9 Cyc. 636. It must be "distinct and unequivocal."—Id. p. 637; *Smoot's Case,* 15 Wall. 37, 47-48, 21 L. Ed. 107.

The letter from the complainant, on which the respondent undertook to rescind the contract, or a part of it, first calls attention to the fact of Mr. Hunter's interpretation of the contract as to averages, asks that respondent note this for future invoices, and states, "We can square up in our next payment the difference in deliveries already made." The postscript merely points out that it is a question of invoicing, rehearses the terms of the contract, and says, "You have therefore to deliver to us all the sawn timber, cut, and we are ready and willing to pay for it, in accordance with the contract." In addition to this, it is shown that afterward the money was tendered to the respondent, in accordance with its demands, reserving the matter of the construction of the contract to be determined in the future.

For these reasons, as well as upon the grounds before stated, the respondent had no right to rescind the contract or any part of it. We do not think that the so-called refusal of the complainant comes up to the conditions laid down by the authorities referred to in the brief of appellant, to-wit, *Hieronymus Bros. v. Bienville Water Sup. Co.*, 131 Ala. 447, 454, 31 South. 31; *Worthington & Co. v. Gwin*, 119 Ala. 44, 53, 54, 24 South. 739, 43 L. R. A. 382; 9 Cyc. 649.

This court has laid down the principle that, where one party desires to rescind a contract, and the other party has not repudiated it, it is his duty to notify the opposite party and to give him a reasonable time within which to comply with the terms of the contract.—*Elliott v. Howison*, 146 Ala. 570, 587, 40 South. 1018. So that, even if the action of the complainant justified the rescission (which it did not), the respondent's claim that the contract was rescinded and could not be revived by the subsequent offer of the complainant to pay for the timber in accordance with the demands of the respondent is untenable. Nor can it be said that said subsequent offer showed a determination to abandon the contract. It merely left the difference of opinion as to the construction of the contract to be determined in the future.

In the original contract between the parties it is provided that "payment of all said timber shall be, in cash, on the delivery of specifications, and that the said timber shall be inspected, at seller's expense, by W. J. Thornton, of Mobile, Ala., whose inspection shall be final." The evident purpose of providing for this inspection was to ascertain, before the timber was accepted, its grade, and whether it was in accordance with the contract; and the intention is as clear that, when the timber was inspected and received, that transaction was closed. The inspection was final and con-

clusive on both parties, and neither party could afterward claim that it was not properly inspected and received, or that there should be a reaverage of the entire amount received, and a readjustment of accounts on said new average.

Of course, all contracts can be opened up for fraud, and if a fraud was perpetrated, by either party, in the delivery of the timber, that could be inquired into; but that would not cover an error in the average, where both parties had the timber and all the facts before them and agreed on the average and inspection then made.

It results that the question as to whether the complainants were within their contract rights, in refusing to pay for the two rafts offered on December 13, 1902, depends upon the further question whether the timber had been held back contrary to the provisions of the contract, and the rafts manipulated contrary to the spirit and intent of the contract. But, however that may be, as before stated, the respondents were not authorized to cancel the contract, and having attempted to do so, and proceedig to sell the timber contrary to its provisions, they are liable for damages; and the measure of damages is correctly stated by the chancellor, to wit, the difference between the contract price, and the price at which said rafts were sold. At least, the sellers cannot complain.

The chancellor's decree adopts the same construction of the contract which we have given. It provides that each raft be taken at its own average, and as to the timber cut, but not delivered, in place of taking the general average of the whole, he adopted the only feasible way of making the average, according to the contract, to wit, making the average on each 300 sticks as fast as they were cut, and could have been delivered.

Respondent's objections to the register's report are based on the claim that they had a right to rescind the contract, and are not liable in damages for the results of their attempting to do so, and on the claim that, as to the rafts delivered December 22, 1902, and not paid for, the register found the amount due, in accordance with the chancellor's directions; but the chancellor changed that item and made the estimate contrary to the directions of the decree. The direction in the decree is that said Ackley & Co. were to be credited with the contract price of the rafts delivered and not paid, "Each raft to be taken on its own average, and no raft to contain less than 300 pieces." The agreement between the parties shows that the delivery of December 22, 1902, "On the basis of a separate average for each of said rafts amounted to $2,821.49," while the price "calculated on the basis of one average for both of the rafts combined was $2,629.08."

The register reported the value of these rafts, in accordance with the decree and the agreement, at $2,821.49. The complainant moved the court to reduce this item, "because it appears from the evidence submitted at the reference that the said valuation of said rafts was based upon the making up of separate averages by means of holding back timber in violation of the terms of the contract," and the chancellor granted the motion and reduced the item to $2,629.49. The only evidence which the register had before him was the agreement of the parties, and there is nothing said in said agreement about timber being held back in violation of the terms of the contract. Consequently, the chancellor erred in reducing this item.

The respondent was allowed the abatement claimed by it, on account of the failure of title of part of the lands, and, as the general statement of the accounts shows that the respondent is indebted to the complainant, the respondent recovers nothing on his cross-bill.

The decree of the chancellor will be corrected, by substituting $2,821.49 in place of $2,629.49 and omitting the $97.57 interest, as above indicated, leaving the amount due March 4, 1909, $17,286.33, as found by the register; and, as so corrected, the decree of the chancery court is affirmed.

Corrected and affirmed. ·

DOWDELL, C. J., and McCLELLAN and MAYFIELD, JJ., concur.

