GEORGE H. FRASER, Appellant, *v.* HORACE L. KENT, Respondent.

Second Department, January 14, 1921.

Patents — action for breach of covenant by assignor of patent to disclose to assignee all improvements invented by assignor — duty to disclose patentable improvements only — improvement defined — device designed by defendant not improvement within meaning of covenant — appeal — findings by Appellate Division on affirmance of judgment — good faith of defendant not ultimate fact in issue — evidence of good faith admissible.

The covenant by the defendant, an alleged breach of which is the basis for the action, contained in an agreement assigning to the plaintiff the defendant's interest in a patented mill, whereby the defendant agreed to fully disclose to the plaintiff all improvements invented by him upon the mill, did not oblige the defendant to disclose ideas or suggestions as to changes or alterations which, although they might be described as improvements upon the mill, were not patentable.

An improvement of the mill imported an addition or alteration with respect to that mill for which an application for a patent might be made.

The device which the defendant designed and the failure to disclose which is alleged to constitute a breach of defendant's covenant has no certain application to any complete mill.

The device designed by the defendant, which consisted merely in the difference in location of equalizing springs, a matter of mechanical construction, was not an invention.

The Patent Office having refused a patent to the defendant on the device on the ground that it was embodied in the mill owned by the plaintiff, said device was not patentable within the meaning of defendant's covenant.

Under section 1317 of the Code of Civil Procedure, the Appellate Division in affirming a judgment may make its own findings.

The plaintiff did not establish that the defendant in failing to disclose the device did withhold an improvement on the plaintiff's mill within the purview and purpose of the covenant.

The good faith of the defendant in not making disclosure was not an ultimate fact in issue, for his belief that he had not invented an improvement on the plaintiff's mill was not decisive of his liability.

But defendant's testimony as to his good faith was admissible since the plaintiff questioned it and it was not irrelevant to the issue.

On all the evidence, *held*, that the defendant has performed all of the covenants and conditions of the contract and has not violated any of the terms or conditions thereof.

APPEAL by the plaintiff, George H. Fraser, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 10th day of December, 1919, upon the decision of the court rendered after a trial at the Kings Trial Term, the jury having been withdrawn and discharged upon consent of the parties.

In 1899, Fraser, the plaintiff, and Kent, the defendant, made a written contract whereby Kent assigned his patent for the Kent mill to Fraser and Fraser agreed to make and to sell the mill of that type and to pay Kent a royalty of $600 upon each mill sold. The contract contained a provision relative to future improvements of the mill. The two provisions of the contract particularly material in this action are:

"*First.* Said Kent hereby conveys and assigns to said Fraser all the right, title and interest which he now has or may hereafter acquire in, to and under each and all of said Letters Patent, applications and inventions hereinbefore recited, together with any and all improvements on the particular mills set forth and claimed in said Letters Patent and applications already filed; and together with all his right, title and interest in and to the above recited agreement between said Kent and the Kent Pulverizing Company; Provided however, that this assignment shall not be deemed to include any future

inventions and improvements of said Kent other than those which are improvements on the particular mills set forth and claimed in said Letters Patent and in said applications already filed, all other future inventions of said Kent to be and remain his undivided property.

"*Second.* Said Kent further covenants and agrees to execute, acknowledge and deliver to said Fraser, when and as demanded by him, specific assignments of each of the Letters Patent, applications, inventions and improvements hereinbefore recited and contemplated in such form as will enable said Fraser to perfect and secure his record title thereto and to each and every part thereof, such instruments, however, to be by their terms conditional upon and subject to the provisions of this agreement. Said Kent further covenants and agrees to promptly and fully disclose to said Fraser all improvements invented by him upon said particular mills as aforesaid, and whenever said Fraser shall deem any of said improvements of sufficient value to patent and shall cause applications for patents to be prepared therefor, then said Kent shall duly execute such applications upon demand, but the same shall be without cost to said Kent."

Fraser thereafter made and sold the Kent mills and a development of them known as the Maxecon mill. After a time dissensions led to law suits. In this action Fraser sues Kent for damages for breach of his covenant in the said second provision of the contract. He complains that Kent made that breach in 1901, which was not discovered by Fraser until 1917. Fraser alleges his performance of the contract, save payment of certain royalties due Kent but for the alleged breach. Kent answered by way of general denial.

*Almet Reed Latson,* for the appellant.

*I. R. Oeland,* for the respondent.

JENKS, P. J.:

The law recognizes such a contract. (*Magnolia Anti-Friction Metal Co.* v. *Singley,* 17 N. Y. Supp. 251, 253, and cases cited.) The issue tried is whether Kent broke the covenant contained in the 2d paragraph. Fraser contends that Kent did so when in 1901 Kent filed an application for a patent

for the Hubbard mill. This contention rests upon certain drawings in that application numbered 11, 12 and 13. It seems necessary to explain the contention by reference to the Kent mill. This mill (and its development, the Maxecon mill) crushes substances like ore or rock. The type is known as the " ring roller mill." There is an upright metal ring termed the crushing ring. Inside of that ring are set crushing rollers. Material placed between ring and rollers is crushed between them. The type was not new. The novelty of Kent's mill is the equalization of the pressure of rollers against ring. Theretofore, if the material to be crushed happened to contain a resisting substance, there was danger to the machinery. Kent's invention made these rollers adjust themselves, automatically distributing the pressure, and so safeguarded the machinery. This adjustment of the rollers was made by three springs which held each of the three rollers separately against the ring. Kent's application for the Hubbard mill included the use of equalizing springs. *In Kent's mill the springs were placed outside of the ring — outside of its frame. Fraser insists that these said drawings — 11, 12, 13 — which revealed that in the Hubbard mill such springs were to be placed between the axles of the rollers, showed that the springs in the Kent mill could be so placed and, therefore, Kent violated his said covenant by not promptly and fully disclosing " this device " to Fraser.* Let us examine this covenant, in consideration of the situation of the parties. Fraser was a solicitor of patents who proposed to enter upon the business of making and selling the Kent mill. He acquired the patent from Kent, the inventor, in consideration of a royalty of $600 upon each mill sold. Naturally, Fraser would seek to control any improvements thereafter invented by Kent upon that mill, and Kent would agree in consideration of the royalties which were to be paid to him. (See comments of BRADLEY, J., in *Aspinwall Mfg. Co.* v. *Gill,* 32 Fed. Rep. 700, 701.) Fraser must have understood the language of the covenant expressed in terms usual in the nomenclature of patent law. Kent was not in the service of Fraser, and the covenant did not impose such servitude upon Kent. It did not oblige Kent to disclose ideas or suggestions as to changes or alterations which, although they might be described as improvements upon

Second Department, January, 1921. [Vol. 194.

that mill, were not patentable. An improvement may be such, without being patentable, or it may be patentable. As is said in *Allison Brothers' Co.* v. *Allison* (144 N. Y. 29), speaking of the word " improvement " as used in the assignment, " The word is to be governed, necessarily, in its application, by the sense which the context lends to it." (See, too, *Lamson* v. *Martin,* 159 Mass. 564, 565.) The covenant contemplates improvements *invented* by Kent that *may be patented* as improvements upon that mill. And the purpose of the covenant is to afford prompt and full disclosure that Fraser may cause an application for such a patent. The duty of disclosure arises only when Kent has invented an improvement on that mill for which a patent may be applied for. An improvement of the Kent mill imported an addition or alteration with respect to that mill to increase efficiency without destroying identity. It included " two necessary ideas," *first,* the instrument to be improved, *second,* some change in it not affecting its essential character " but enabling it to produce its appropriate results in a more perfect or more economical manner." (Rob. Pat. § 210, citing authorities.)

*First.* There is a conflict of testimony as to whether this device was an improvement on *the Kent mill.* Fraser is not supported by the fact that the device purported to be applicable to the Kent mill or to that type of crushing machine known as the ring roller type, for it is undisputed that the application for the Hubbard mill contemplated a different type of mill known as the " tube type " or " cylindrical " mill. Fraser testifies to his opinion that it was such an improvement, and his chief expert, Dow, supports him to the extent of the opinion that certain mechanical changes could have been made in that mill to admit of the location of the equalizing springs as suggested in the said drawings. Kent testifies to his opinion that the device was not applicable to the Kent mill, even with mechanical changes therein. And Kent's chief expert, Southard, corroborates that opinion in full. The long trial of two weeks was largely consumed in the examination and cross-examination of these two clashing experts. Within the confines of this opinion I cannot even summarize their testimony.

Fraser's case, as I have said, rests upon the proposition

that drawings 11, 12, 13, show a device applicable to the Kent mill, and to that *only*, as being the sole " three roll " mill in existence when those drawings were made.

So it becomes of vital importance to consider the possible purpose and connection of those drawings. As to this it must be noted that these drawings are part of a series to which series the drawings 8, 9, 10 belong, and these precede the three in question. But while it might be asserted that one of these drawings shows three internal rollers (like the Kent mill), both the others show, respectively, *one* internal roller and *two* internal rollers, with external rollers or friction rings supporting the ring. And these forms are *at least* as near the Hubbard mill as any form of the Kent mill.

A fair conclusion is that the whole series of six drawings has no certain application to any complete mill.

*Second.* Was there an improvement " *invented* " by Kent? It is undisputed that the function of the equalizing springs in the Kent mill and as shown in the said drawings on the application for the Hubbard mill is the same. The difference disclosed is in the location of the springs — a matter of mechanical construction. True, the springs as located in the Kent mill push from the outside, while as located in the drawings they would push from the inside, but that variance was not an invention so long as the functions were the same. (*Westinghouse* v. *Boyden Power Brake Co.*, 170 U. S. 567.) Indeed, Fraser himself, a patent solicitor of long experience, ingenuously testifies that he knew of the principle and wonders that " I didn't do it myself "— this " mere shifting of the spring from one point to another," as he expresses it. His statement in his direct examination is as follows: " Q. —— Exhibit 51? A. ——shown in Exhibit 51, was to put the springs inside of the axles radially of the rolls and effect the in and out yield from the inner point instead of the outer point. By the Court: Q. The same result by different construction? A. The same result by mere shifting of the spring from one point to another. Now, after it is all done it looks simple. I wonder why I didn't do it myself. When I sat down here and pumped out these mills and paid out all this money for them and had the disadvantages that I have labored under with them, it does surprise me that I didn't

think of that particular idea. I've come pretty close to it
in my own Maxecon attempts to get at that result in a practical
way, but I did not think of that particular thing, or I would
have adopted it if I had. The advantages of it are manifest —
to me."

In *Burt* v. *Evory* (133 U. S. 359) the court say: " We do
not think there is any patentable invention in it; but, on the
contrary, that it is merely a carrying forward of the original
idea of the earlier patents on the same subject — simply a
change in form and arrangement of the constituent parts
of the shoe, or an improvement in degree only." In *Con-
solidated Roller Mill Co.* v. *Walker* (138 U. S. 132) it is said
that " the mere carrying forward of an original conception,
resulting in an improvement, in degree simply, is not inven-
tion." (See, too, *Babcock* v. *Northern Pac. R. Co.*, 26 Fed.
Rep. 756; *Lettelier* v. *Mann*, 91 id. 909–911; *Greist Mfg. Co.* v.
*Parsons*, 125 id. 116; *Pelzer* v. *Dale Co.*, 103 id. 494; affd.,
106 id. 989; Rob. Pat. § 236, n. 1.)

*Third.* As to the patentability of this device Fraser's
proposition is that if these drawings had been disclosed fully
and promptly, he would have decided that it was patentable
and would have caused an application for a patent to be
made for an improvement on the Kent mill. But what
evidence have we that Fraser could have succeeded in that
application? It is in evidence that the claim with respect to
this feature of the location of the equalizing springs in the
application made by Kent was rejected by the Patent Office
as not the subject of a patent in that it was embodied in the
patent for the Kent mill, a patent then owned by Fraser.
This decision of the Patent Office has weight. (See *Boyden
Power-Brake Co.* v. *Westinghouse Air-Brake Co.*, 70 Fed. Rep.
816–828.) If the patent for the improvement had issued,
it would have been *prima facie* proof of novelty and patenta-
bility (*Western Electric Co.* v. *Millheim Electric Tel. Co.*,
88 Fed. Rep. 507, citing *Seymour* v. *Osborne*, 11 Wall. 516,
and cases cited in note to 3 Rob. Pat. § 1016), and the contrary
effect would attach to the refusal of the application. As to
the presumption, see 20 Ruling Case Law, 1112, and cases
cited. Moreover, in *Miller* v. *Eagle Manufacturing Co.* (151
U. S. 197) the court say: " In *McCreary* v. *Pennsylvania*

*Canal Co.*, 141 U. S. 459, 467, it was held that where a party owned two patents, showing substantially the same improvement, the second was void, the court saying: ' It is true that the combination of the earlier patent in this case is substantially contained in the later. If it be identical with it, or only a colorable variation from it, the second patent would be void, as a patentee cannot take two patents for the same invention.' "

I think, with the burden upon him, Fraser did not establish that Kent in failing to disclose to Fraser the device indicated by these drawings in the application for the Hubbard mill, did withhold an improvement on the Kent mill invented by him, within the purview and purpose of the covenant. I think, however, that pursuant to the power conferred upon this court by section 1317 of the Code of Civil Procedure this court should make its own findings in affirming the judgment. (See *Ely* v. *Barrett*, 224 N. Y. 550; *Andrews* v. *Cohen*, 221 id. 148; *Lamport* v. *Smedley*, 213 id. 82; *Acme Realty Co.* v. *Schinasi*, 215 id. 495.)

The learned and able counsel for the appellant argues that there was pervasive error in the judgment because the trial court evidently was of opinion that if Kent, although as matter of fact he did invent an improvement upon the Kent mill, did not believe that he had done so, Kent did not break his covenant. This argument rests largely upon the contention that a refusal of the finding proposed by the plaintiff and a refusal of a finding proposed by the defendant with the comment by the court, present irreconcilable findings unless explained by this alleged belief of the court. So far as this particular proposition is concerned, it may be answered that the two rejected findings refer to different things: that of Fraser to the improvements contemplated by the said 2d paragraph of the contract, which is the basis of this action; and that of the defendant to the improvements contemplated by the 1st paragraph of the contract, which are not within this controversey except so far as the performance of the contract generally is concerned. It is true, however, that the court did find that Kent believed that the application which is alleged to constitute the breach of the covenant, related to rock crushing machines of a different type from

Second Department, January, 1921.        [Vol. 194.

those covered by the patent for the Kent mill and that in
filing that application for the Hubbard mill Kent had no
thought of an improvement on the Kent mill; that if such
application applied to the Kent mill, Kent did not know it
and did not believe it and had no thought that the device
disclosed by the said drawings was patentable as an improve-
ment on the Kent mill. The good faith of Kent in not making
disclosure was not an ultimate fact in issue, like, for example,
*bona fides* in case of negotiable instrument. But I think
that testimony of Kent's good faith was admissible for two
reasons: *first,* the plaintiff questioned it and, therefore, Kent
was entitled to meet the attack; *second,* Kent's good faith
was not irrelevant to the issue. The covenant related not
to any existing thing, but to a thing to be brought into
existence by Kent. The duty of disclosure did not arise
until there came into existence an improvement on the Kent
mill invented by Kent that might be the subject of a patent.
In the absence of any other or earlier disclosure, and the
absence of any other criterion of the existing thing, Kent was
necessarily the judge in the first instance. Kent's belief that
he had not invented an improvement on the Kent mill was
not decisive of his liability under the covenant. If, for
example, it were contrary to the weight of the facts, Kent
would not be absolved, no matter how honest his belief; and,
*a fortiori,* if the facts justified a conclusion that he had been
guilty of bad faith by subterfuge or secrecy. The ultimate
fact depended not on Kent's belief, but on Kent's acts.

Further, as there was not available evidence of practical
demonstration, both parties necessarily resorted to evidence
which was opinionative in its nature. Kent's testimony was
competent, if that of the other witness was competent. After
discussion of the question of admissibility of good faith under
the doctrine of " the oft quoted Michigan case " of *Watkins* v.
*Wallace* (19 Mich. 75), Jones in his Commentaries on Evidence,
section 170(a), says: " The same principle must apply to
the ' understanding ' of a party relative to the meaning or
effect of a contract." In *Watkins* v. *Wallace* (*supra,* 76) the
court say: " Intention is generally proved by circumstances,
because usually there is no other mode of proof. But when
the only person who knows the fact is accessible as a witness,

his answer must necessarily be more direct evidence than any other; and if there is any reason to suspect his candor, the jury can make all the allowances called for by his position and demeanor." (See, too, *Hale* v. *Taylor*, 45 N. H. 405–407; *Delano* v. *Goodwin*, 48 id. 203.) Chamberlayne on the Modern Law of Evidence, section 1741(e), lays down the rule: " Should the fact of good faith be relevant, in any of its phases, to an issue in the case, evidence of it may be received. Indeed, the person in question may testify to it himself." Wigmore, section 1971, draws the distinction between *receiving* evidence of the private understanding, and enforcing it, saying: " Rulings of exclusion will usually or often· mean in reality, not that the evidence should not be listened to, but that the private ' understanding ' will not be enforced; and practically this may in a given instance be a correct enough result." The court sat as a jury, and its finding as to Kent's good faith was merely of " incidental facts, which only amount to evidence from which the ultimate fact is to be obtained," while " it is only the ultimate facts which the court is bound to find. " (*The City of New York*, 147 U. S. 72, 76, 77.) Kent was entitled to the presumption of good faith (*Gauss Sons* v. *Orr & Lindsey*, 46 Ark. 129; *J. M. Ackley & Co.* v. *Hunter-Benn & Co.'s Company*, 166 Ala. 295, 307), and I think that the evidence justified the court in its conclusion that relates to that feature of the case.

If the court had excluded any testimony as incompetent, irrelevant or immaterial, upon the theory that Kent's good faith was the ultimate fact or an ultimate fact, or if it appeared that the findings of the court on the ultimate fact were limited or affected or qualified by the court's belief that Kent had abused good faith or was ignorant, and we could infer but for that the court would have found adverse to Kent upon the issue, then quite a different question would be presented.

I am not inclined to discuss the suggestion on the one hand that Fraser's suit is an effort to escape the payment of royalties which he admits in his complaint are due save for the alleged breach; or the suggestion, on the other hand, that Kent has been caught by chance in an attempt to patent an improvement which in the first instance belonged to Fraser. It is not necessary to ascribe such purpose to Fraser. His

attitude can be explained by his error in assuming that a device which *he* thought would " improve " his Kent mill should have been disclosed to him by Kent, although it was a mere shifting of the springs, to use his own language, whereas he could only hold Kent to a disclosure of an improvement invented by Kent on that mill that afforded the possibility ·of a patent. Kent's attitude can be explained by the fact that he did not believe that the relocation of the springs was applicable to the Kent mill. It might be asked as a practical question, if Kent did think the contrary, why did he not disclose it to Fraser if, as Fraser asserts, its great value was apparent? For Kent was still interested to the extent of $600 on every mill sold. If it be answered that perhaps Kent thought that the Hubbard mill might be of greater profit, yet that answer fails when we recall the undisputed evidence that the Hubbard mill proved a failure. For thereafter Kent knew of this device of relocation which was refused as a patented improvement because Fraser already owned the patent that covered it, and, therefore, if Kent considered it applicable to the Kent mill he could have suggested it to Fraser. For Kent could not use it without the consent of Fraser.

Upon the proof this court finds:

*First.* That prior to the commencement of this action, and on or about March 1, 1899, the plaintiff and defendant entered into a certain agreement under their hands and seals, dated on that day, a copy of which, marked Exhibit A, is annexed to the complaint herein.

*Second.* That the said contract contained the following provision: " Said Kent hereby conveys and assigns to said Fraser all the right, title and interest which he now has or may hereafter acquire in, to and under each and all of said Letters Patent, applications and inventions hereinbefore recited [United States Letters Patent, numbered 482,795, dated September 20, 1892, and numbered 513,114, dated January 23, 1894, application for other patents of the United States, May 9, 1896, Serial No. 590,858 and February 8, 1898, Serial Number 669,515], together ·with any and all improvements on the particular mills set forth and claimed in said Letters Patent and applications already filed; * * *

Provided, however, that this assignment shall not be deemed to include any future inventions and improvements of said Kent other than those which are improvements on the particular mills set forth and claimed in said Letters Patent and in said applications already filed, all other future inventions of said Kent to be and remain his undivided property."

*Third.* That all of said patents and applications enumerated in paragraph " second " hereof, related to rock crushing mills, pulverizing mills, and improvements thereon.

*Fourth.* That the defendant Kent assigned to the plaintiff Fraser all his right, title and interest in and to the patents and applications for patents enumerated in paragraph hereof numbered " second."

*Fifth.* That the art of rock crushing and pulverizing hard objects has been improved by the use of various types of mills.

*Sixth.* That the letters patent and applications for letters patent, as enumerated in paragraph hereof numbered " second " contemplated the employment of the mill known as the " ring and roller type."

*Seventh.* That the plaintiff Fraser under the trade name of the Kent Mill Company made and sold many mills, some of which the plaintiff called " Kent mills," which said mills were the machines and machinery contemplated in the contract and covered by the letters patent and applications for letters patent referred to in said contract, and others the plaintiff called " Maxecon mills," which were also manufactured and sold under letters patent and applications for letters patent referred to in said contract, and said " Maxecon mills," in addition, embodied certain other novel devices and inventions possessed by the plaintiff.

*Eighth.* That said " Kent mills " and " Maxecon mills " are of the " ring and roller type."

*Ninth.* That subsequent to the execution of the agreement of March 1, 1899, the defendant conceived a device described and set forth in figures 11, 12 and 13 of a certain application for letters patent, filed October 17, 1901, in the United States Patent Office by Kent, this defendant, serial number 78,918. A certified copy of the file wrapper of said application is plaintiff's Exhibit 7 herein.

*Tenth.* That the defendant did not disclose the device mentioned in paragraph " ninth " hereof to the plaintiff.

*Eleventh.* That the contract further provided: " Said Kent further covenants and agrees to promptly and fully disclose to said Fraser all improvements invented by him upon said particular mills as aforesaid, and whenever said Fraser shall deem any of said improvements of sufficient value to patent and shall cause applications for patents to be prepared therefor, then said Kent shall duly execute such applications upon demand, but the same shall be without cost to said Kent."

*Twelfth.* That the defendant Kent promptly and fully disclosed to the plaintiff Fraser all improvements invented by him upon the particular mills provided for in the contract.

*Thirteenth.* That the plaintiff first learned of the existence of the device mentioned in paragraph " ninth " hereof, on May 14, 1917.

*Fourteenth.* That plaintiff Fraser was in possession of the facts of the principle as to the application and location of the springs on the axle of the grinding rolls, as set forth in drawings 11, 12 and 13 of Exhibit 7 at the time of making the contract Exhibit A, by reason of the possession by Fraser of drawing 1 of Exhibit 3, but plaintiff Fraser did not realize the possibility of the application of the principle of drawings 11, 12 and 13 of Exhibit 7 to the machine he was manufacturing.

*Fifteenth.* That the defendant Kent has performed all the covenants and conditions of the said agreement alleged by plaintiff to have been violated by the defendant.

*Sixteenth.* That defendant Kent has not violated any of the terms and conditions of the contract, Exhibit A, alleged by plaintiff to have been violated by defendant.

### Conclusions of Law.

1. That the defendant Kent has performed all of those covenants and conditions of the contract, Exhibit A of the complaint, on his part agreed to be performed, which plaintiff alleged defendant had violated.

2. That the defendant Kent has not violated any of the terms and conditions of the contract as set forth in the complaint or alleged by the plaintiff in this action to have been violated by the defendant.

3. That the defendant is entitled to judgment, with costs of the action.

The judgment of the trial court is affirmed, with costs.

Present — JENKS, P. J., MILLS, PUTNAM, KELLY and JAY-COX, JJ.

Judgment unanimously affirmed, with costs. Settle order before the presiding justice.