(81 South. 18)

## OLLINGER & BRUCE DRY DOCK CO. v. JAMES GIBBONY & CO.
### (1 Div. 27.)

(Supreme Court of Alabama.  Nov. 14, 1918. Rehearing Denied Feb. 13, 1919.)

1. CONTRACTS ⬙9(1)—CONTRACT TO REPAIR BARGE—DEFINITENESS—"REPAIR."

A contract to put a barge in good repair was not too uncertain and indefinite to form the foundation of the owner's suit for damages for delay, etc., against the contractor; "repair" meaning restoration to a sound, good, or complete state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Repair.]

2. CONTRACTS ⬙272—CONTRACT TO REPAIR BARGE—RESCISSION.

Letter from owners to contractor to repair barge, requesting that no further repairs be made, and that, when the contractor was ready to take up the work, the owners be advised, that they might outline just what was to be done, held not a rescission of the contract.

3. CONTRACTS ⬙277(1)—CONTRACT TO REPAIR BARGE—DELAY—NOTICE.

Contractor to repair barge held liable to owners for unreasonable delay in doing the work, though the owners gave no notice that a reasonable time for the work to be completed had elapsed, and that the contractor was to be held in default unless the work was completed within a reasonable time thereafter, a notice required in case of rescission.

4. CONTRACTS ⬙171(1) — CONTRACT TO REPAIR BARGE—INDIVISIBLE CHARACTER.

Contract for repair of barge held entire, not divisible, contractor entering items for work and material merely for its information to form basis for total charge at conclusion of work, so that contractor, which unreasonably delayed the work, resulting in suit for damages by owners, could not recover on its plea of set-off for work done and material furnished on theory contract was divisible.

5. CONTRACTS ⬙303(3) — FAILURE TO PERFORM—EXCUSE—ACT OF GOD.

Where neglect of contractor to repair barge to complete work in reasonable time concurred with a storm, an act of God, in the partial destruction of the barge, the act of God afforded no excuse to the contractor for failure to perform to entitle it to recover for part performance.

6. WORK AND LABOR ⬙14(1) — PART PERFORMANCE—PREVENTION BY OTHER PARTY.

Contractor to repair barge cannot recover on quantum meruit for part performance on theory performance was prevented by wrongful act of owners, where owner's letter on which reliance is placed by contractor was not a wrongful or any rescission of the contract, and it is not shown that completion of the contract was prevented by the letter.

Appeal from Circuit Court, Mobile County; Norville R. Leigh, Jr., Judge.

Action by James Gibbony & Co. against the Ollinger & Bruce Dry Dock Company. From judgment for plaintiffs, defendant appeals. Affirmed.

Appellees, owners of a barge called Cahaba, entered into a contract with the appellant for the "proper repair" of said barge; the repairs not being specified, nor anything said as to the price or the time within which the work was to be done.

In June, 1915, the barge was delivered to the appellant for the purpose of making repairs. Some work was done by appellant toward repairing said barge during the months of June, July, and August, 1915, and occasionally work was done thereon up to December, 1915. No work whatever was done or materials furnished therefor after December 2, 1915, and nothing was being done by appellant toward resuming the work on June 26, 1916.

The testimony tended to show that from two to four months was a reasonable time within which to complete all the repairs. The testimony further shows that appellees, through their agent, made inquiries from time to time in regard to the completion of the work, and different dates in the future were stated as to when the work would be completed.

On July 5, 1916, this barge was lying at the docks of appellant, with its hoisting machinery out and a large amount of its planking removed for the purpose of being replaced with new material. In this condition, on said July 5th, the barge was struck by the hurricane of that date, the hoisting machinery washed away and lost, and the barge itself carried several miles up the river and cast ashore. Some time later the barge was floated by the appellant; but upon an examination thereof it was discovered that in

---

its condition, it would have cost about as much to repair it as it would have cost to build a new barge, and therefore further work thereon was abandoned, and the barge considered as a loss, witness testifying "that it would have cost about as much to repair it as it would have cost to build a new barge."

Appellant was due appellees an admitted balance of $807.66, with interest thereon, for coal furnished appellant by appellees, and as to this amount there was no controversy. The evidence shows that the rental value of the barge in question throughout the period of from June 2, 1915, to June 26, 1916, was $200 per month.

Appellees brought suit against appellant upon common counts for moneys due for merchandise, goods, and chattels sold, and also upon special counts setting up the contract for repair and the circumstances, and claiming damages for the loss of the use of the barge during the period through which the repairs were wrongfully delayed, and also claiming damages for the ultimate loss of the barge and its equipment. On motion to strike, the court ruled that the damages incident to the ultimate loss of the barge were not recoverable, and that question is therefore not here treated. Appellant pleaded the general issue, and also a set-off in the sum of $4,000 for work and labor done and material furnished; and other special pleas setting up the consent for the delay, and the further plea setting up that on June 26th, some ten days before the storm, appellees had notified appellant to make no further repairs on the barge until given additional instructions. Upon such issues the cause was submitted to the jury, and the court gave at the instance of appellees the following instructions, in writing:

"(2) The court charges the jury that, if they believe the evidence, they must find for the plaintiffs for the reasonable value of the use or hire of the barge Cahaba for such time, if any, as is shown to your reasonable satisfaction by the evidence to have elapsed after the expiration of a reasonable time for the making of the repairs which defendant agreed to make to June 26, 1916, together with interest thereon, and also for the admitted balance of $807.66, with the interest thereon owing from May 1, 1916, by defendant to plaintiffs under their transactions not connected with the contract for the repairs on the Cahaba. * * *

"(4) The court charges the jury that, if they believe the evidence in this case, they cannot find for the defendant upon its plea of set-off, and cannot allow it anything for materials furnished or work done in making the partial repairs shown by the evidence to have been made upon the barge Cahaba."

There was verdict and judgment for the plaintiffs (appellees) in the sum of $2,769.04, from which judgment this appeal is prosecuted.

The evidence tended to show that it was the custom of the repairer on contracts of this character to keep a record of the cost of the work done, material furnished, and of the time the craft occupied the dock, and the amount charged the customer was the aggregate of such cost, to which was added a certain percentage for the profit; that these items for work done and material furnished were for the repairer's information, and that they were also mailed to the customer, so that he would know how the work was progressing. One such statement was received by appellees from the appellant about June 23, 1916, being the first received on this job, showing a claim on the part of appellant for work done upon the barge to that date, amounting to about $4,000. Appellees were of the opinion that the reasonable amount for the repairs to that date should not have exceeded $2,000. A few days after receipt of said statement, on June 26, 1916, appellees wrote appellant as follows:

"Please make no further repairs on our barge Cahaba, which is now at your docks, and which has been there now for almost one year and a half, and when you are ready to take up the repair work on this barge, please advise us as we desire to outline just what work is to be done."

On the same date appellees wrote appellant for an itemized statement of their account, making a like request on June 29th and July 17th.

The questions treated in the opinion were raised in the court below by demurrers to the special counts, and also by the rulings of the court on demurrers to pleas, and the above charges given at request of the appellees.

Harry T. Smith & Caffey, of Mobile, for appellant.

Stevens, McCorvey & McLeod, of Mobile, for appellees.

GARDNER, J. [1] It is first insisted by counsel for appellant (defendant) that the contract for repairs, "to put the barge in good repair," is too uncertain and indefinite to form the foundation of this suit. It was established without conflict that the agreement on the part of the appellant was to "put the barge Cahaba * * * in good repair," and the argument is that such a term is too indefinite to constitute a valid contract, in that what might be considered "good repair" by one person might be deemed wholly inadequate by another.

This same argument, however, would be applicable to the ascertainment of the reasonable value of any particular article, or a reasonable time for the doing of a given act; and yet these are matters which have been held to be sufficiently definite to form the basis of a contract.

The word "repair" has been defined as follows:

"Restoration to a sound, good, or complete state after decay, injury, waste, dilapidation, or partial destruction." Webster's International Dict.; Dougherty v. Taylor, 5 Ga. App. 773, 63 S. E. 930; 7 Words and Phrases, 6096, 6102.

It would appear, therefore, under the above meaning of the word "repair," that the adjective "good" as used in the contract may be considered as surplusage, neither adding to nor taking from the actual meaning of said word. As to what should constitute placing the barge in good repair would not be a matter left to the caprice of any of the parties, but, in case of disagreement thereon, it would be held to consist of what is the general and ordinary course pursued by reasonable and prudent business men in dealing with similar situations.

We are of the opinion that the objection to the contract for indefiniteness is not well made.

[2] It is' next insisted that damages are not recoverable by the plaintiffs (appellees) for the delay in the performance of the contract, for the reason that the plaintiffs themselves rescinded the same.

This argument is rested upon the assumption that the letter of June 26th, set out in the above statement of the case, was tantamount to a rescission of the contract. This letter is to be construed in the light of the facts and circumstances surrounding the parties at the time. Plaintiffs had been furnished a statement showing an amount for repair work at that time, which was very nearly double the sum which they considered was a reasonable compensation for the repairs, and, further, that plaintiffs knew at that time that the defendant (appellant) had done no work whatever upon this job for practically seven months, and that no preparations were being made to resume work thereon. Plaintiffs were evidently not satisfied with the method by which their work was being handled, and we are of the opinion this letter is properly construed as merely a request that, when defendant undertakes to resume the repair on the barge, they be given notice so that they will have an opportunity to outline what should be done. The contract, as previously shown, was silent as to the exact repairs to be made upon the barge, and we have held that, in case of disagreement thereon, such repairs would be considered as consisting of what is the general and ordinary course pursued by reasonable and prudent business men in dealing with similar situations. Clearly it was within the rights of the parties to discuss among themselves as to what would be required to place the barge in good repair, and to make suggestions in reference thereto, and enter into discussions or negotiations as to what should

be considered by the parties within the meaning of the words "good repair." We therefore conclude that the letter is not to be construed as a rescission of the contract, but, on the other hand, that it appears on its face to show an express recognition of a continuance of the same, and expectation on the part of the plaintiffs that the repair work be resumed.

We do not intend by what is here said in treating this question to indicate an opinion that the plaintiffs could not recover damages for the delay for the unreasonable length of time up to June 26th, even should the letter be construed as contended by defendant. But, in view of the construction which we have placed upon this letter, it is unnecessary to enter into a consideration of that question.

The contention on the part of appellant that the appellees voluntarily accepted the benefit of work done is predicated upon the theory that the letter of June 26th operated as a rescission of the contract and what we have here said in regard to our construction of this letter suffices also for this insistence.

[3] It is insisted that recovery of damages for the delay in the performance of this contract cannot be had in this case for the reason that plaintiffs gave the defendant no notice that a reasonable time for the repair work to be completed had passed, and that the defendant was to be held in default unless said work was completed within a reasonable time thereafter. This argument is based upon the doctrine announced in McFadden v. Henderson, 128 Ala. 221, 29 South. 640, Ackley v. Hunter-Benn & Co., 166 Ala. 308, 51 South. 964, Elliott v. Howison, 146 Ala. 568, 40 South. 1018, and other cases of similar character, to the effect that reasonable notice be given of the intention to rescind on account of delay in performance, and reasonable time allowed to remedy the default before the contract should be considered as rescinded.

We are of the opinion that this principle cannot be made to apply in the instant case, where damages are sought for the default of the contracting party in failing to make the repairs within a reasonable time. After the lapse of a reasonable time for the completion of the work the defendant had breached its contract, and substantial damages are shown to have accrued to the plaintiffs.

The notice required in cases of rescission, as in the authorities above cited, relates to the future conduct of the party notified, and we do not see that it would have any place in a case as here presented, where damages are sought for the wrongful delay already accrued. It cannot be questioned that, if the contract had called for the completion of the work within a definite time, and such time had elapsed, the plaintiffs would be entitled to recover damages for the wrongful delay.

The contract in the instant case did not specify any particular time, and therefore the time for the performance is supplied by the law, which requires the work to be completed within a reasonable time; and we are unable to see any sound basis to rest a distinction between such a contract and that where the time is definitely fixed. Some suggestion is made in argument as to acquiescence or consent to such delay, but this record does not sustain such, but rather the contrary. For the wrongful delay the plaintiffs are clearly given a right of action, and to require the notice necessary for a rescission of a contract to be given in a case of this character would render it impossible to recover at least a substantial portion of damages which resulted from delay in the performance.

We have been cited to no authority by counsel for appellant supporting this contention, and have been unable to find any. We do not think that those cases which treat of questions of rescission are analogous to that here presented; and we therefore conclude that the right of action is not lost by the failure to give such notice.

[4] The defendant sought recovery by its plea of set-off, under a quantum meruit, for work done and material furnished, upon several theories, one of which was that the contract for repair was not entire, but divisible, the work done and material furnished being charged item by item, and that therefore recovery may be had for each item without reference to the other, citing, in support of this insistence, Sims v. Ala. Brew. Co., 132 Ala. 311, 31 South. 35; Rock Island S. D. Wks. v. Moore-Handley Hdw. Co., 147 Ala. 589, 41 South. 806.

We are of the opinion, however, that the evidence discloses that the contract was entire, and that the compensation was to be paid to the defendant only upon completion of the job for repairs, and, further, that the custom of the defendant in entering the items for work and material furnished was merely for its information so as to form a basis for the total charge at the conclusion of the work. We therefore conclude that the trial court was correct in holding that the contract was entire, and not severable. Under such a contract, therefore, completion of the repairs was a condition precedent to a right of compensation. Marx v. Kilby Loco. Mach. Wks., 162 Ala. 295, 50 South. 136, 136 Am. St. Rep. 24; Capital Fertilizer Co. v. Ashcraft-Wilkinson Co., 79 South. 484;[1] Comm. Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 South. 222, 60 Am. Rep. 162; Martin v. Massie, 127 Ala. 504, 29 South. 31; note to Milske v. Steiner Mantel Co. (Md.) 5 L. R. A. (N. S.) 1105.

[5] It is further urgently insisted that appellant should be permitted in its plea of set-off a recovery under a quantum meruit for work done and material furnished, although the contract be construed as being entire, upon the theory that the completion of the work was rendered impossible by the act of God, as a result of the storm of July 5th. This question has given rise to much discussion and contrariety of opinion among the courts of other jurisdictions (Krause v. Crothersville School Trustees, 162 Ind. 278, 70 N. E. 264, 65 L. R. A. 111, and note, 102 Am. St. Rep. 203, 1 Ann. Cas. 460; Milske v. Steiner Mantel Co., 103 Md. 235, 63 Atl. 471, 5 L. R. A. [N, S.] 1105, and note, 115 Am. St. Rep. 354; Hawkes v. Kehoe, 193 Mass. 419, 79 N. E. 766, 10 L. R. A. [N. S.] 125, 9 Ann. Cas. 1053), and has also been given consideration in this state (Givhan v. Dailey's Adm'x, 4 Ala. 336; Drake v. Gorrie, 22 Ala. 409; Brumby v. Smith, 3 Ala. 123; Partridge v. Forsyth, 29 Ala. 200; Cutcliff v. McAnally, 88 Ala. 507, 7 South. 331; Martin v. Massie, supra; Comm. Fire Ins. Co. v. Capital City Ins. Co., supra).

Conceding, without deciding, that in a contract of this character the defendant could be excused from the performance of the contract by the act of God, as a result of the storm—under the facts as here presented, yet we are of the opinion that the defendant was not in position to call this principle to its aid. Under the undisputed evidence in this case, at the time of the storm of July 5th, a reasonable time for the completion of the work had long since elapsed, and the defendant had been guilty of great neglect. It is therefore quite clear that its own negligence concurred with the act of God in the partial destruction of the barge. Under such circumstances, therefore, the act of God can afford no excuse to the appellant as for a failure to perform, so as to entitle it to recover as for part performance. A. G. S. R. R. Co. v. Quarles, 145 Ala. 436, 40 South. 120, 5 L. R. A. (N. S.) 867, 117 Am. St. Rep. 54, 8 Ann. Cas. 308; A. G. S. R. R. Co. v. Elliott & Sons, 150 Ala. 381, 43 South. 738, 9 L. R. A. (N. S.) 1264; 124 Am. St. Rep. 72.

In A. G. S. R. R. Co. v. Quarles, supra, speaking of this question, the court said:

"The New York cases hold, and we think correctly, that, where a carrier is intrusted with goods for transportation, and they are lost, the law holds him responsible for the loss unless exempted by showing that the loss was caused by the act of God or the public enemy. And to avail himself of such exemption he must show that he was free from fault at the time. In other words, when there is an unreasonable delay on the part of the carrier in forwarding the goods, and they are destroyed by the act of God during this delay, that he is not excused for the reason that it was by his fault that they were exposed to the peril. Says the court in Read v. Spaulding [30 N. Y. 630, 86 Am. Dec. 426], quoting the language of Gould, J., in Williams v. Grant, 1 Conn. 487, 7 Am. Dec. 235: 'It is a condition precedent to the exoneration of the carriers that they should have been in no default, or, in other words, that the goods of the bailee should not have been exposed to

[1] Ante, p. 92.

the peril or accident, by their own misconduct, negligence, or ignorance. For, though the immediate or proximate cause of the loss, in any given instance, may have been what is termed the act of God, or inevitable accident, yet, if the carrier unnecessarily exposes the property to such accident by any culpable act or omission of his own, he is not excused.' "

The opinion in the above cause discloses a difference of opinion in the courts of this country on this question, and numerous authorities are cited therein. See, also, 6 R. C. L. 1003.

By analogy we are of the opinion that this holding is applicable to the instant case, for, under the undisputed evidence, the defendant was in default, and had it not been guilty of such negligence in that the work was so delayed, the barge would not have been exposed to the peril or accident while in its possession. It was so exposed, therefore, by the misconduct or negligence on appellant's part, and therefore we are of the opinion that it cannot claim exemption on account of the partial destruction of the barge by the act of God.

Upon reconsideration of the cause, we have reached the conclusion that the principle announced in those authorities, in the light of the undisputed evidence, is a full answer to the insistence here made, and is in lieu of what was said by the court upon the original consideration of the case.

[6] It is further argued that, although the contract may be considered as entire, and defendant not excused by reason of damage to the barge by the storm of July 5th, yet it was entitled to recover on the quantum meruit, upon the theory that such recovery may be had where the performance of the contract is prevented by the wrongful act of the other party—citing Ga. Pine Lbr. Co. v. Cent. Lbr. Co., 6 Ala. App. 221, 60 South. 512, and 9 Cyc. 688, among other authorities.

This argument is based upon the assumption that the letter of June 26th was a rescission of the contract. We have previously expressed our view that this letter is not to be so construed, and, futhermore, there was no reply thereto and no action shown to have been taken thereon, and nothing, therefore, to indicate that completion of the contract was prevented by plaintiffs.

We have not treated the rulings of the court in detail, but only in a general way the questions presented thereby, following largely in this respect the treatment given the case by counsel for appellant.

We are of the opinion that the trial court committed no reversible error in its ruling, and that the judgment appealed from should be accordingly affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.