## PHENIX CITY, ALA., v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

### No. 14–O.

District Court, M. D. Alabama, E. D.

May 18, 1940.

Jacob A. Walker, of Opelika, Ala., and J. W. Brassell, of Phenix City, Ala., for plaintiff.

Steiner, Crum & Weil, of Montgomery, Ala., John A. Boykin, Jr., of Atlanta, Ga., and Stokely, Scrivner, Dominick & Smith, of Birmingham, Ala., for defendant.

CHARLES B. KENNAMER, District Judge.

This suit was filed in the Circuit Court of Russell County, Alabama, under the Alabama Declaratory Judgment Act, General Acts of Alabama 1935, page 777, and by proper proceedings to that end, was removed by the defendant to this court. It appears from the amended complaint that a justiciable controversy had arisen and exists between the parties as to their respective rights under two municipal ordinances, one adopted by the plaintiff on November 12, 1900, and accepted in writing by the defendant on November 28, 1900; and the other adopted by the City of Girard (since merged with plaintiff, Local Acts of Alabama 1923, page 52) on March 18, 1901, and accepted in writing by the defendant on March 28, 1901. Copies of the ordinances and written acceptance thereof are made Exhibits A and B to the amended complaint. They are identical in language, except as to the name of the City. A copy of the one adopted by the plaintiff is shown in the margin.[1] And also a controversy

---

[1] "Exhibit B.
"An Ordinance.
"Authorizing the Southern Bell Telephone & Telegraph Company to use the public streets of Phenix City, Alabama, for the purpose of placing poles and electrical conductors thereon.

Section 1. Be it ordained by the General Council of the City of Phenix City, that permission be and the same is here-

exists as to the respective rights of the parties under Section 2490 of the Code of 1896, under which is granted to telephone and telegraph companies a "right of way * * * along the margin of public highways" for the construction of their lines.

The question for decision is: Do these ordinances, involving as they do question of law rather than fact, grant a mere revocable license, or permit, or do they, accepted and acted upon as they were, constitute a valid and binding contract between the parties authorizing the defendant, its successors and assigns, to use the streets of the city now, or as hereafter laid out, for the construction, maintenance and operation of its telephone lines, in perpetuity?

It is not necessary to decide, and is immaterial, in the view I take of this case, whether defendant has an additional franchise grant direct from the State, under Section 2490 of the Code of 1896, concern-

by granted to the Southern Bell Telephone & Telegraph Company, its successors and assigns, to erect, operate and maintain lines of telephone and telegraph, including the necessary poles, fixtures and electrical conductors, upon, along and over the public roads, streets and highways of said City of Phenix City, as its business may from time to time require, provided that all poles shall be neat and symmetrical.

"Section 2. That the work of erecting poles by virtue of this ordinance shall be done under the supervision of Street Committee, and the said Southern Bell Telephone & Telegraph Company shall replace and properly relay any sidewalk or street that may be displaced by reason of the erection of such poles, and upon failures of the company so to do after twenty days' notice in writing shall have been given by the Mayor of said City of Phenix City to said Company, the City may repair such portion of the sidewalk or street that may have been disturbed by said Company, and collect the cost so incurred from said Company.

"Section 3. In consideration of the rights and privileges herein granted, said Company shall provide one cross arm on each pole for the free use of the Police and Fire Alarm System of the said City of Phenix City.

"Section 4. Said Company shall at all times be subject to the ordinances now in existence, or which may be hereafter passed, relative to the use of the public streets by telephone and telegraph companies.

"Section 5. Said Company shall indemnify the City of Phenix City against, and assume all liabilities for, damages which may arise or accrue to the City of Phenix City from any injury to persons or property from doing any work herein authorized, or the neglect of said Company, or any of its employees, to comply with any ordinance relative to the use of the streets of said city, and the acceptance by the Company of this ordinance shall be an agreement by it to pay to the City of Phenix City any sum of money for which the City may become liable from and by reason of such injury.

"Section 6. Said Company shall file with the Clerk of Council of the City of Phenix City its acceptance of this ordinance within sixty days from the date when it shall take effect.

"Section 7. This ordinance shall be in force from and after the date of its passage.

"Council Chambers Phoenix City, Ala.
"Nov. 13th/1900

"I hereby certify that this ordinance and Contract is a true and correct Copy of the same as adopted by Council of Phoenix City on Nov. 12th/1900
"J. B. Coan
"Clerk & Treas.

"Phenix City, Ala., Acceptance of ordinance.
"November 28, 1900

"To the Honorable General Council of the City of Phenix City, Ala.
"Gentlemen:

"In pursuance with section six of the ordinance entitled: "An Ordinance authorizing the Southern Bell Telephone and Telegraph Company to use the public streets of Phenix City, Alabama, for the purpose of placing poles and electrical conductors thereon", adopted by the General Council of the City of Phenix City, Alabama, on November 12th, 1900, this Company hereby files its acceptance of the same with the Clerk of said Council.

"Very respectfully
"Southern Bell Telephone and
Telegraph Co.,
"By—Edwd J. Hall
"President.

"Phenix City Council
"Phenix City, Ala., Dec. 11th 1900
"G. M. Morgan, Mgr.
"Columbus, Ga.
"Dear Sir:

"I beg to acknowledge receipt of acceptance of ordinance passed by the Council of Phenix City, Ala. November 12th 1900, signed by Edwin J. Hall, Prest. So Bell Tel & Tel Co. The said ordinance will be posted ten days from above date to comply with the law in regard to same.
"J. B. Coan
"Clerk of Council."

ing which an issue of fact exists. This, because, no matter how that issue of fact be resolved, and it can only be resolved in favor of or against one of the parties, the result would add nothing to, nor subtract anything from, the franchise rights of the defendant herein adjudicated under the ordinances Exhibits A and B. Therefore, discussion and decision of that question are pretermitted.

■ It is clear from the averments of the amended complaint, together with the charters of the two cities, of which this court takes judicial knowledge (Cooper v. Valley Head, 212 Ala., 125, 101 So. 874), that both municipalities had ample legislative authority to deal with the subject matter of the ordinances, and their validity not having been questioned for 40 years, I think, after this lapse of time, it can be assumed that they were regularly and legally adopted. Cooper v. Town of Valley Head: supra; City of York v. Iowa L. & P. Co., 8 Cir., 109 F.2d 683; McQuillian Municipal Corp., 2d Ed., Vol. 2, Sections 840, 656, 886, 909, 1353. It is equally clear that the Constitution of 1901, certain provisions of which plaintiff invokes, can have no application to these ordinances, as it did not become effective until after the ordinances were adopted and accepted. Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912, Ann.Cas.1914C, 1282; Town of New Decatur v. American T. & T. Co., 176 Ala. 492, 58 So. 613, Ann.Cas. 1915A, 875. But even under the Constitution of 1901, each of these cities, admittedly having less than six thousand population, would not have been restricted by the terms of Section 228 limiting to thirty years the term of a franchise which can be granted by a city or town having a population in excess of six thousand.

■ It is also clear that the ordinances do not fall within the condemnation of Article 1, Section 23 of the Constitution of 1875, which reads as follows: "Section 23. That no ex post facto law, or any law impairing the obligation of contracts, or making any irrevocable grants of special privileges or immunities, shall be passed by the General Assembly"—for the reason that they do not purport to make the grants to defendant, its successors and assigns, in any sense exclusive, nor do I find that they offend against any other provision of that Constitution. Birmingham & Pratt Mines St. Ry. v. Birmingham St. Ry. Co., 79 Ala. 465, 58 Am.Rep. 615; Town of New Dec-

atur v. American T. & T. Co., 176 Ala. 492, 58 So. 613, Ann.Cas.1915A, 875; Bienville Water Co. v. Mobile, 186 U.S. 212, 22 S.Ct. 820, 46 L.Ed. 1132; Old Colony Tr. Co. v. City of Omaha, 230 U.S. 100, 33 S.Ct. 967, 57 L.Ed. 1410.

■ The alleged failure of defendant to install cross-arms for a fire alarm and police system is of no consequence, because the complaint states that plaintiff had never installed such a system and therefore had no need for the cross-arms. Furthermore, there could be no rescission for breach of the covenant to install these cross-arms, until and unless the city had such a system and called upon the telephone company to furnish the cross-arms. Until then, plaintiff cannot complain of an alleged breach. Ingram v. Bussey, 133 Ala. 539, 31 So. 967; McFadden v. Henderson, 128 Ala. 221, 29 So. 640; Ollinger & Bruce Dry Dock Co. v. Gibbony & Co., 202 Ala. 516, 81 So. 18. Defendant's covenant to install cross-arms was in no sense a dependent covenant or condition precedent or subsequent. Murphy v. Schuster Springs Lbr. Co., 215 Ala. 412, 111 So. 427.

■ Whether or not the municipalities contemplated the installation of the police and fire alarm system provided for in Section 3 of the ordinances is immaterial, as the acceptance by the defendant, and the construction at heavy expense, and the maintenance and operation of the telephone lines thereunder, and the furnishing of telephone service to the inhabitants of the cities, alone constitute a valid consideration for the grant. Town of New Decatur v. American T. & T., 176 Ala. 492, 58 So. 613, Ann.Cas.1915A, 875; Frost v. Corporation Commission, 278 U.S. 515, 49 S. Ct. 235, 73 L.Ed. 483; Owensboro v. Cumberland Tel. & Tel. Co., 230 U.S. 58, 33 S. Ct. 988, 57 L.Ed. 1389; Postal Telegraph v. Ingraham, D.C., 228 F. 392; Southern Bell Tel. & Tel. Co. v. Mobile, C.C., 162 F. 523; affirmed 5 Cir., 174 F. 1020.

What then is the proper construction of the ordinances in the light of the words used, the circumstances surrounding the parties at the time, and the purpose to be accomplished? Did the parties intend the grant of a mere license or permit, revocable at the will of the municipalities, or did they intend an irrevocable franchise contract?

■ The amended complaint makes the point, and counsel for plaintiff on the argument urged that the word "permission"

in Section 1 of the ordinances imports a mere revocable license or permit; but the meaning of the ordinances is not to be determined by any one isolated word, but from the instruments as a whole. It will be noted that in the title or caption of each ordinance, the word "authorized" is used instead of "permitted", and that the grant made in Section 1 extends not only to the Southern Bell Telephone & Telegraph Company, but to its successors and assigns, and for the future as its business may from time to time require, which is inconsistent with the theory that a mere license was granted. In Section 3, reference is made to "rights and privileges herein granted." Thus, by this reference to "rights and privileges" in Section 3, the word "permission" in Section 1 is defined. The ordinances must be read as an entirety, and from the entire ordinance, not a part or a word thereof, must the intent of the parties be gathered. The "rights and privileges" spoken of in Section 3, of necessity, refer to something granted to the company in Section 1, because in no other section of the ordinance is the company granted anything. The remaining sections treat with the terms and conditions surrounding the rights granted in Section 1. Therefore, the parties, by their contemporaneous construction, construed the ordinances as granting "rights and privileges", and the real intent and meaning of Section 1 is defined and made clear.

█ Indeed, counsel for plaintiff very frankly stated on the argument that had the word "right", or some other equivalent word, been used instead of "permission", the ordinances would, under the decisions, constitute grants of irrevocable and perpetual franchises. But, as indicated, I am unable to follow the argument that because "permission" was used instead of "right" in Section 1 of the ordinances, they constitute mere revocable licenses. However, even if it were necessary that the word "right" be used, then in my opinion the use of the words "rights and privileges herein granted", in Section 3, and the word "authorize" in the caption, supply the words which plaintiff insists would be necessary to constitute the grant of an irrevocable franchise.

That there is no magic word which must be inserted in a franchise ordinance in order to make it an irrevocable contract, is clearly demonstrated by the fact that in the many franchise ordinances held by the courts to constitute irrevocable franchises when acted upon, a number of different words or phrases are used. For instance, in New Orleans v. Great Southern Telephone Company, 40 La.Ann. 41, 3 So. 533, 8 Am.St.Rep. 502, the Company was "authorized" to construct and maintain a line or lines, and the court held this ordinance to constitute an irrevocable franchise.

In City of Owensboro v. Cumberland Telephone & Telegraph Company, 230 U. S. 58, 33 S.Ct. 988, 57 L.Ed. 1389, the company was "authorized and hereby granted the right" to erect and maintain telephone lines, and this ordinance was likewise held to be an irrevocable contract.

In Town of New Decatur v. American Telephone & Telegraph Co., 176 Ala. 492, 58 So. 613, 633, Ann.Cas.1915A, 875, the company was "granted the right, privilege and authority to construct" telephone lines. This ordinance was also held to constitute an irrevocable grant of a franchise.

In each of these cases, it was the nature of the acts authorized by the ordinance, and the fact that the company had acted upon it by the construction of its lines, not the mere verbiage of the ordinance, that constrained the court to hold it to be an irrevocable franchise.

█ What was said by Mr. Justice Lurton in the Owensboro case is particularly pertinent at this point:

"That the right conferred by the ordinance involved is something more than a mere license is plain. A license has been generally defined as a mere personal privilege to do acts upon the land of the licensor, of a temporary character, and revocable at the will of the latter unless, according to some authorities, in the meantime expenditures contemplated by the licensor when the license was given have been made. See Greenwood Lake & P. J. R. Co. v. New York & G. L. R. Co., 134 N.Y. 435, 440, 31 N.E. 874; Southampton v. Jessup, 162 N.Y. 122, 126, 56 N.E. 538.

"That the grant in the present case was not a mere license is evident from the fact that it was upon its face neither personal nor for a temporary purpose. The right conferred came from the state through delegated power to the city. The grantee was clothed with the franchise to be a corporation and to conduct a public business, which required the use of the streets, that it might have access to the people it was to serve. Its charges were subject to reg-

ulation by law, and it was subject to all of the police power of the city.

"That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company is the granting of a property right has been too many times decided by this court to need more than a reference to some of the later cases: [citing authorities]. As a property right it was assignable, taxable, and alienable. Generally it is an asset of great value to such utility companies, and a principal basis for credit.

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the city making the grant. [Citing authorities]. If there be authority to make the grant, and it contains no limitation or qualification as to duration, the plainest principles of justice and right demand that it shall not be cut down, in the absence of some controlling principle of public policy. This conclusion finds support from a consideration of the public and permanent character of the business such companies conduct, and the large investment which is generally contemplated. If the grant be accepted and the contemplated expenditure made, the right cannot be destroyed by legislative enactment, or city ordinance based upon legislative power, without violating the prohibitions placed in the Constitution for the protection of property rights." Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 990, 57 L.Ed. 1389.

In the very nature of things, the construction of telephone lines necessarily implies permanency and perpetuity of use in the fulfillment of the obligation to serve the public. In addition to the Owensboro case, the following cases are illustrative of the many decisions sustaining the principle:

"In considering the duration of such a franchise it is necessary to consider that a telephone system cannot be operated without the use of poles, conduits, wires, and fixtures. These structures are permanent in their nature and require a large investment for their erection and construction.

To say that the right to maintain these appliances was only a license, which could be revoked at will, would operate to nullify the charter itself, and thus defeat the state's purpose to secure a telephone system for public use. For, manifestly, no one would have been willing to incur the heavy expense of installing these necessary and costly fixtures if they were removable at will of the city, and the utility and value of the entire plant be thereby destroyed. Such a construction of the charter cannot be supported, either from a practical or technical standpoint." City of Louisville v. Cumberland Tel. & Tel. Co., 224 U.S. 649, 32 S.Ct. 572, 576, 56 L.Ed. 934.

"The circumstances surrounding the grant of 1892 shows no intention either to give or accept a mere revocable right. It would be against common experience to conclude that rational men wittingly invested large sums of money in building a railroad subject to destruction at any moment by mere resolution of county commissioners. Detroit v. Detroit Citizen's Street R. Co., 184 U.S. 368, 384, 22 S.Ct. 410, 46 L.Ed. 592.

"Where there are no controlling provisions in state Constitution or statutes and no prior adjudication by its courts to the contrary, we have distinctly held that franchises like the one under consideration are contracts not subject to annulment as here undertaken. [Citing authorities]." Northern Ohio T. & L. Co. v. Ohio ex rel. Pontius, 245 U.S. 574, 38 S.Ct. 196, 199, 62 L.Ed. 481, L.R.A.1918A, 865.

These cases all cite numerous authorities in support of the principles announced, but it is unnecessary to repeat them here.

If there can be any doubt that the ordinances here involved, accepted, acted upon and operated under as they have been over a period of 40 years, without objection and without question (see Port of Mobile v. Louisville & N., 84 Ala. 115, 4 So. 106, 5 Am.St.Rep. 342), should be construed as granting irrevocable franchise contracts, and in my opinion there can be none, the question is definitely settled insofar as this court is concerned by the case of Southern Bell Telephone & Telegraph Company v. City of Mobile, C.C., 162 F. 523, affirmed by the Circuit Court of Appeals, 5 Cir., 174 F. 1020. One of the ordinances involved in that case, which was adopted only 3 months after one of the ordinances involved here, used the same word "permission" and employed the identical language contained

in these ordinances. The case is on all-fours with this case, and it was held expressly and unequivocally that the ordinance there involved constituted a valid, binding and irrevocable contract between the company and the City, authorizing the company, its successors and assigns, to use in perpetuity the streets of the City for the construction, maintenance and operation of the company's telephone lines, subject only to a proper exercise of the police power of regulation. So that, if on principle I could accept the construction of the ordinances advanced by the plaintiff, as I cannot, the question is foreclosed by the decision in that case.

On May 9, 1940, in City of Phenix City v. Alabama Power Co., 195 So. 894, the Supreme Court of Alabama decided many of the issues in this case contrary to plaintiff's contention.

The motions of the defendant to dismiss and for a judgment on the pleadings are in my opinion well taken, and an appropriate order will be entered.