CITY OF BENTON, Arkansas,
Joe H. CALDWELL, Mayor;
Noel H. BUTLER, Jr., Charles F. CUNNINGHAM,
Wilson DuVALL, John C. McMAHAN, Lynn A. MOORE
and Gerald W. PORTER, Directors; and
Maurice BENNETT, City Clerk *v.* Hugh
NETHERCUTT, Reese SMITHERS, J. J.
PERKINS, Arch COOPER and Madison CLOUD et al

78-257                                    574 S.W. 2d 269

Opinion delivered December 18, 1978
(In Banc)

*Spitzberg, Mitchell & Hays,* by: *Harold H. Simpson II* and *Kent Foster,* for appellants.

*Harmon, Garrett & Moudy,* by: *Dan Harmon,* for appellees.

GEORGE HOWARD, JR., Justice. We are to determine whether the trial judge committed reversible error in concluding, in a declaratory judgment proceeding, that the City of Benton's referendum ordinance, requiring referendum petitions to be filed within 30 days after the passage of an ordinance on which a referendum is sought, is invalid, thus resulting in an order requiring a referendum on ordinances

1, 3, 33, 34, 36, 37, 38 and 39, although the referendum petitions were filed more than 30 days after the passage of the ordinances.

## THE FACTS

On December 20, 1977, the Board of Directors of the City of Benton enacted Ordinances Numbers 33, 34, 36, 37, 38 and 39. Ordinances 1 and 3 were enacted on January 3, 1978, and January 5, 1978, respectively.

On February 2, 1978, petitions bearing 1,181 signatures, requesting a referendum on the ordinances, were filed with the City Clerk by appellees.[1]

The appellants refused to call an election contending that the referendum petitions were not filed within the time prescribed by Ordinance No. 2 of 1949.

On March 14, 1978, appellees filed their petition in the Circuit Court of Saline County for a writ of mandamus requiring appellants to call an election.

After conducting a hearing, the trial court entered the following order on August 17, 1978:

"The Court finds that Ordinance No. 2 of 1949 which was introduced at the trial of the above styled case should not be considered as an authentic ordinance because it indicates no signature of the Mayor or Clerk-Recorder.

"Therefore, the Court finds that the Petitions are timely and the certification by the individuals is adequate certification of the entire petitions.

---

[1]Appellees-petitioners alleged in their petition for mandamus in the trial court that the petitions for referendum would have been filed within 30 days of enactment of the ordinances "except the city officials informed them they would need signatures based upon the last general election when, in fact, they needed signatures based upon the election for city directors in January, 1977."

The only issue presented by this appeal relates to the validity of the referendum measure, Ordinance No. 2 of 1949.

"Therefore, the Mayor and Council of the City of Benton are hereby ordered to call a special election within the next sixty days to refer to the voters of Benton, Arkansas Ordinances No. 1, 3, 33, 34, 36, 37, 39 & 39 of the year 1978."

On September 6, 1978, the trial judge entered the following supplemental order:

"The Court advises that it inadvertently omitted from the Order previously entered herein, a stay of any action under the Ordinances . . . "

Appellants filed their notice of appeal on September 11, 1978.

Pursuant to appellees' petition praying an order requiring appellants to "show cause why they should not be held in contempt of this court for failure to comply with the prior order of this court," the following second supplemental order was entered by the trial court on September 28, 1978:

"2. The previous injunction ordered by this Court is modified as follows:

Arkansas Power & Light Company, Arkla Gas, and Southwestern Bell Telephone Company are ordered to continue collections of taxes under the appropriate Ordinances above. Any payments made to the City of Benton under said Ordinances on or before this date may be retained by the City. Further, said utilities are ordered to divide all future payments under said Ordinances as follows: Any and all increases in future payments to the City of Benton caused by such Ordinances shall be paid into the registry of this Court, pending the outcome of the election or appeal. However, said utilities shall pay such amount as was required by former Ordinances to the City of Benton."

## THE DECISION

Inasmuch as an election was scheduled, on the ordinances involved in this case, for November 22, 1978, pursuant to the order of the trial court, and time was of the essence, we entered our order reversing the holding of the trial judge and stated that an opinion would follow delineating the posture of this Court in this matter. Accordingly, this opinion is issued in accordance with this pledge.

It is plain from the record before us that the pivotal point in the trial judge's holding that Benton's Referendum Ordinance is invalid is because the copy introduced into evidence, by appellees, does not reflect the manual signature of the Mayor or the City Clerk as opposed to the signatures being typed, thus culminating in the conclusion that appellees' petitions for referendum were timely.[2]

The fundamental problem that confronts us, in considering the stance taken by the trial judge, is the failure on the part of the trial court in not only acknowledging other acceptable ways of establishing lost ordinances which have been duly enacted, but the trial court's failure to consider the abundance of evidence contained in this record that clearly and unequivocally established that the municipality of Benton duly and legally enacted a referendum ordinance, namely, Ordinance No. 2 of 1949.

Maurice Bennett, City Clerk of Benton, testified that although he had examined the official books containing ordinances and resolutions enacted by the City from 1944 through 1960, he neither found the original nor a copy of Ordinance No. 2 of 1949, but he did find other evidence of its ex-

---

[2]Amendment No. 7, Section 1, of the Arkansas Constitution, in relevant part, is as follows:

". . . [R]eferendum powers of the people are hereby further reserved to the local voters of each municipality . . .

"Municipalities may provide for the exercise of the . . . referendum as to their local legislation.

". . . In municipalities and counties the time for filing . . . a referendum petition is not less than 30 days nor more than 90 days after the passage of such measures by a municipal council. . . . "

istence and further found that the ordinance had not been repealed. For example, Mr. Bennett testified that he found in the Book of Minutes for the period from 1942 through 1949, minutes of the City Council of June 1, 1949, wherein Ordinance No. 2 of 1949 was adopted and that the ordinance was referred to as "an ordinance fixing the time for filing of referendum petitions." However, Mr. Bennett admitted that the minutes, which had been duly adopted, were not signed by the Mayor and the Recorder and stated that he could not offer any explanation for this, but the minutes were the official records of the City of Benton.

Moreover, Mr. Bennett further testified that he found in the records the proof of publication of notice of the enactment of the ordinance; that the notice was published in the June 23, 1949, issue of the Benton Courier, a reputable daily newspaper located in Benton, and that the proof of publication was executed by L. V. White, manager of the Benton Courier; and that the printed version of Ordinance No. 2 of 1949, attached to the sworn proof of publication, designated Henry A. Kelly as Mayor and Lowell L. White as City Clerk.

Mr. Bennett denied that he had any discussions with appellees relative to the time for filing referendum petitions; that he became aware, for the first time, that there was an ordinance on the subject during the time that the petitions were being circulated; and that although there was no copy of the ordinance available in his office, the minutes delineating the steps taken by the City Council of Benton in enacting the ordinance, and the proof of publication of the ordinance were on file for the public to inspect.

Noel Butler, Jr., who has lived in Benton since 1936, held office under the old mayor-aldermanic form of government as Clerk for four years and Mayor for eight years, and, is currently serving as a member of the Board of Directors, testified that he was thoroughly familiar with the procedure followed by the City of Benton over the years relating to the passage, recording and maintenance of ordinances for the City of Benton.

Mr. Butler further testified that after an ordinance is passed, it is published in the local newspaper three times; and that a copy of the ordinance is filed in the official ordinance book for the city. He also testified that during his administration as Clerk, he compiled the present set on ordinance books and that they are the official and legitimate books of the City of Benton. Mr. Butler further stated that there was a discussion, during a meeting of the present Board of Directors, concerning the current issue whether the city had an ordinance that limited the time for the filing of referendum petitions; and that no further action was taken by the Board when a microfilm of the referendum ordinance was found at the City Library.

Ark. Stat. Ann. § 19-2405 (Repl. 1968), in relevant part, provides:

"The printed copies of the bylaws and ordinances of any municipal corporation, published under its authority, and transcripts of any by-law, ordinance, or of any act or proceeding of any municipal corporation, recorded in any book or entered on any minutes or journal, kept under the discretion of such municipal corporation, and certified by its clerk, shall be received in evidence for any purpose for which the original ordinances, books, minutes or journals would be received with as much effect. . . . "

Ark. Stat. Ann. § 19-2405 is in accord with the prevailing view that the original minutes of a municipal corporation, when duly kept and maintained, are competent evidence to prove the enactment of an ordinance. *See:* McQuillin, Municipal Corporations, 1969 Revised Volume, Section 22.39; *Lewis v. Forrest City Special Improvement District,* 156 Ark. 356, 246 S.W. 867 (1923).

Moreover, an ordinance read in evidence from the books of a municipality will be presumed to have been enacted, where no evidence to the contrary appears. *Van Buren v. Wells,* 53 Ark. 368, 14 S.W. 38 (1890); *Arkadelphia Lbr. Co.* v. *Arkadelphia,* 56 Ark. 370, 19 S.W. 1053 (1892). In the instant

case, it is clear that the proof of publication of notice of the adoption of the referendum ordinance, with a printed copy of the ordinance attached, from the Benton Courier, was filed in the Ordinance Book of the City and became a part thereof.

In addition, under the best evidence rule, a printed compilation of ordinances when duly authenticated as correct is admissible as proof of an ordinance contained in the compilation, where it is established that the original ordinance has been misplaced or destroyed. *See:* Rule 1005, Uniform Rules of Evidence, which provides as follows:

> "The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original. *If a copy complying with the foregoing cannot be obtained by the exercise of reasonable diligence, other evidence of the contents may be admitted.*" (Emphasis Added)

Act 36 of 1949, Ark. Stat. Ann. § 19-2404, an act prescribing the procedure for the recording of Municipal Ordinances, for the publication of ordinances and the adoption of codes for zoning, construction of buildings, installation of plumbing and the installation of electrical wiring, is neither dispositive of the issue raised in this action, nor conflicts with the posture taken by the Court. Ark. Stat. Ann. § 19-2405, among other things, is a rule of evidence. In other words, an ordinance which has been duly enacted and published, but misplaced or lost, the minutes or journal, which are official, "shall be received in evidence for any purpose for which the original ordinances, books, minutes or journal would be received with such effect."

In *Adams v. Sims,* 238 Ark. 696, 385 S.W. 2d 13, decided November 23, 1964, we made the following pertinent observation:

> ". . . While the Court does not countenance nor en-

courage carelessness on the part of city officials or the keeping of inadequate city records, the ordinances, resolutions or acts of municipal councils will not be invalidated if it appears from the record that the proceedings were regular and in substantial compliance with the law, and presumptions will be indulged in favor of the validity of the corporate action. . . . The weight of authority recognizes that most corporate acts can be proven as well by parole evidence as by the introduction of written instruments. The fact that the records of a city failed to disclose actions by its city council is not conclusive that the council did not take same. Parole evidence is permissible to establish the real facts of corporate acts in the absence of records, or where the record which it kept is so meager where the particular transaction, act or vote is not disclosed. . . . "

The posture taken by the Court in *Adams* was predicated in part upon Ark. Stat. Ann. § 19-2405. Therefore, it is readily apparent that Ark. Stat. Ann. § 19-2404 did not repeal § 19-2405.

Aside from the aforementioned evidence establishing the enactment of Benton's Referendum Ordinance, the lapse of 29 years since the passage of the ordinance coupled with the testimony of Charles Nickerson, City Manager, to the effect that previous revenue ordinances enacted by the City of Benton which generated referendum petitions, raises a sufficient presumption not only of the enactment of the referendum ordinance, but approval of same by the Mayor and a publication of the measure. *Phenix City* v. *Southern Bell Telephone & Telegraph Co.*, 33 F. Supp. 283; *Santa Rosa* v. *Central St. Ry. Co.*, (Cal.), 38 P. 986; McQuillin, Municipal Corporations, 1969 Revised Volume, Section 22.34.

We, therefore, conclude that the evidence contained in this record dictates a finding that appellees' referendum petitions were untimely, and, accordingly, we reverse the trial court.

Reversed.

FOGLEMAN, J., concurs.

GEORGE ROSE SMITH, BYRD and HICKMAN, JJ., dissent.

GEORGE ROSE SMITH, Justice, dissenting. The majority approach this case as if there is only one question to be considered: Has it been shown by admissible evidence that the City of Benton validly adopted Ordinance No. 2 in 1949? The majority, with the aid of secondary evidence and legal presumptions, find that the ordinance was validly adopted. That ends the majority's inquiry; the people are denied the right to vote at a referendum election.

I think the majority have not reached the true issue in the case. In my judgment the controlling question is this: Has the city, by failing to make the ordinance a matter of public record, sufficiently complied with the law to put the sponsors of the referendum petition on notice that their permissible time under Amendment 7 has been shortened to 30 days? I would answer that question in the negative and accordingly permit the election to be held.

Our proper attitude toward a controversy such as this one was well expressed in 1959: "It is against public policy to restrict the free use of the ballot or place restraints on free elections." *David* v. *Fowler,* 230 Ark. 39, 320 S.W. 2d 938 (1959). In harmony with that principle of public policy I would require a city to comply strictly with the statute which requires that all ordinances "shall be recorded in a book kept for that purpose and shall be authenticated by the signature of the presiding office of the governing body and the clerk or recorder." Ark. Stat. Ann. § 19-2404 (Repl. 1968).

I am not suggesting that recordation is essential to the enforcement of every ordinance in every situation. If, for example, the city adopted an ordinance authorizing the mayor and city clerk to enter into a certain contract on behalf of the city, the city could not invalidate the contract by failing to record the ordinance.

But that is not the situation before us. Under Amend-

ment 7, in the absence of municipal action, referendum petitions may be filed not less than 30 nor more than 90 days after the passage of the measure to be referred. If a city chooses to limit the time to the minimum of 30 days, it should put its citizens on notice of that limitation. The City of Benton wholly failed to do so.

The appellee Nethercutt, before preparing to circulate referendum petitions, asked for copies of the pertinent ordinances. He was, understandably as it now appears, not supplied with a copy of Ordinance No. 2 of 1949, restricting the petitioners to 30 days No wonder! That ordinance had not been recorded in the ordinance book kept by the city, as required by law. There was no copy of the ordinance in the city hall. The members of the city's board of directors did not know whether such an ordinance existed. The city manager, after an intensive search begun after the present controversy arose, was finally able to find an unsigned copy on microfilm at the city library. Yet the voters are now told that they were charged with notice of the sleeping ordinance, even though responsibility for their actual want of notice rested squarely upon the city itself. I would not permit the city, as a result of its own disregard of the law, to block the efforts of the voters to hold a referendum election. The circuit court's judgment, directing that the election be held, should be affirmed.

CONLEY BYRD, Justice, dissenting. The General Assembly on February 2, 1949, passed Act 36 of 1949, which in toto provides:

## ACT 36

"AN ACT Prescribing the Procedure For the Recording of Municipal Ordinances, For the Publication of Said Ordinances; Adoptions of Codes by Reference; and for Other Purposes.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. All by-laws or ordinances after their passage shall be recorded in a book kept for the purpose and shall be authenticated by the signature of the presiding officer of the governing body and the clerk or recorder, and all by-laws or ordinances of a general or permanent nature and all those imposing any fine, penalty or forfeiture shall be published in some newspaper of general circulation in the corporation; provided, in incorporated towns where no newspaper is published, written or printed notice posted in five of the most public places in said corporation shall be deemed a sufficient publication of any law or ordinance for incorporated towns, and it shall be deemed a sufficient defense to any suit or prosecution for such fine, penalty or forfeiture to show that no such publication was made. Provided, further, that ordinances establishing rules and regulations for zoning, construction of buildings, the installation of plumbing, the installation of electric wiring or other similar work where such rules and regulations have been printed as a code in book form, such code or provisions thereof may be published by such municipality by reference to title of said code without further publication or posting thereof; provided, however, that not less than three copies of such code shall be filed for use and examination by the public in the office of the city clerk or recorder of such municipality subsequent to the adoption thereof.

SECTION 2. All laws or parts of laws in conflict herewith are hereby repealed.

SECTION 3. Whereas, the proper recording of municipal ordinances is necessary for the enforcement of municipal laws, and whereas, this Act is necessary for the protection of the public peace, health and safety, an emergency is hereby declared to exist and this Act shall be in full force and effect from and after its passage and approval.
APPROVED: February 2, 1949."

The record shows that the alleged ordinance upon which the City of Benton relies was only mentioned in the minutes of the City Council of June 1, 1949. Since the alleged ordi-

nance deals with a matter of "a general or permanent nature" it obviously does not comply with Act 36, *supra,* and consequently, does not have any force or effect since it was neither "recorded in a book kept for that purpose" nor "authenticated by the signature of the presiding officer of the governing body and the clerk or recorder" as required by Act 36, *supra.*

The case of *Adams* v. *Sims,* 238 Ark. 696, 385 S.W. 2d 13 (1964), cited in the majority opinion, does not explain to the citizens of the City of Benton why Act 36 of 1949 is not applicable. In that case we were only dealing with a resolution activating an "Urban Renewal Agency" pursuant to Act 40 of 1961. In holding that Act 36 of 1949, Ark. Stat. Ann. § 19-2404 (Repl. 1968) was not applicable, we pointed out that Act 36 of 1949 only applies to "by-laws or ordinances," the issue before the court had only to do with a resolution and consequently § 19-2404, *supra,* was not applicable. We are not here dealing with a resolution but an ordinance of a general and permanent nature.

Since Section 2 of Act 36 of 1949 specifically repealed "all laws or parts of laws in conflict" therewith, the majority should explain to the good citizens of the City of Benton who signed the referendum petitions why they are not entitled to rely upon Act 36 of 1949 in preparing and presenting their referendum petitions.

I also concur with the reasons stated by Justice George Rose Smith.

For the reasons herein stated, I respectfully dissent.

DARRELL HICKMAN, Justice, dissenting. I agree with the dissenting opinions of Justices Smith and Byrd, and then some.

No doubt the general assembly in its collective wisdom passed Ark. Stat. Ann. § 19-2404 (Act 36 of 1949), which requires that all ordinances be recorded in a book kept for that purpose, to obviate years of shoddy bookkeeping practices. It is a good law. The obvious intent of the statute is to require that all city ordinances be kept in one place so that interested

people or those with a need to know can go to one book to determine what laws are in effect in a particular city.

The City Clerk of Benton testified that the ordinance in question was not in the Benton Ordinance Book. The fact that ordinances which were passed before the one in question were in the book is a significant fact that cannot be ignored.

After a diligent search the city produced some evidence that an ordinance had been passed. It consisted of unsigned minutes of the Board, a newspaper clipping and an unsigned copy of the ordinance. Considering the requirements and formalities of making laws, that evidence is certainly not conclusive. The requirement that laws be signed is to assure citizens that those laws have been duly passed by governing authorities; unless there are exceptional circumstances, that requirement should not be waived.

The majority has clearly ignored the provisions of Ark. Stat. Ann. § 19-2404, which requires that ordinances be recorded in a book, and instead has applied general rules of evidence in deciding that a law, in fact, existed which limits the constitutional rights of voters to refer matters to the city as a whole.

The old maxim, "Ignorance of the law is no excuse", takes on a new meaning in the City of Benton and other cities in view of the majority opinion. It will be the rule, rather than the exception, because the majority has found that a city ordinance to be lawful does not have to be signed or recorded to be valid; minutes of council meetings do not have to be signed to be credible; a law may be proved by using a newspaper clipping or an unsigned copy of an ordinance which is found in some file somewhere.

We are not dealing here with a matter of form. We are dealing with a substantial right of the voters. Amendment 7 to the Arkansas Constitution granted voters a right, within a certain number of days, to petition their government for change. Also, by that Amendment, cities, by local legislation, may limit that right. Any attempt to limit such substantial rights should be carefully scrutinized, and any laws providing therefor should be strictly construed in favor of the vot-

ers. The majority has certainly not applied any such standard.

I suppose the decision also means that property rights can be taken by zoning ordinances, or citizens can be fined or jailed on the basis of similar laws lying in some form, somewhere in a file, unsigned, unrecorded and brought out at a time to fit a particular need.

What is the sense of having a law that requires that ordinances be recorded in a book if it has no significance? What is the use of requiring that ordinances be signed if it has no effect?

There is no doubt that the majority has by its decision completely negated the effect and import of Ark. Stat. Ann. § 19-2404. The statute says ordinances will be recorded and authenticated. The majority opinion says they do not have to be recorded or authenticated. If there is to be any remedy in this matter, obviously it lies with the legislature.